## CITY OF GALVESTON v. GALVESTON COUNTY.

### No. 11359.

Court of Civil Appeals of Texas. Galveston.

Feb. 19, 1942.

Rehearing Denied March 12, 1942.

Bryan F. Williams, City Atty., and Frank Nussbaum and Dudley W. Peterson, Asst. City Attys., all of Galveston, for appellant.

Charles H. Theobald, Co. Atty., and Emmett F. Magee and Edward A. Jahn, Asst. Co. Attys., all of Galveston, for appellee.

CODY, Justice.

This appeal involves a conflict of jurisdiction between the City of Galveston and the County of Galveston over the Seawall Boulevard, and the sidewalks adjacent thereto—insofar as the same is situated within the corporate limits of the City. It is, as we view it, a case of the first impression, and comes before us in the form of an appeal from an order granting to the County a temporary injunction restraining the City, and its co-defendant, Dual Parking Meter Company, "from installing, placing or erecting parking meters on the land and premises known as the seawall and Seawall Boulevard and sidewalks, and from drilling and boring holes in or tearing up portion or part of the surface of said seawall and Seawall Boulevard and sidewalks thereof." If there is any substantial evidence to support the exercise of the court's discretion in granting the temporary injunction, such discretion will not, of course, be disturbed on appeal.

The seawall, the Seawall Boulevard, its flanking sidewalks, and the containing-wall, form component parts of the defensive barrier erected against the storm waters of the Gulf. They were erected by the County Commissioners' Court of Galveston County under authority of R.S. Articles 6830 and 6831, which Articles were enacted in virtue of Sections 7 and 8 of Article 11 of the Texas Constitution, Vernon's Ann.St. empowering counties and cities bordering on the Gulf of Mexico to construct seawalls, etc. Article 6830, so far as here relevant, reads: "The county commissioners' court of all counties * * * bordering on the coast of the Gulf of Mexico, shall have the power and are authorized from time to time to establish, locate, erect, construct, extend, protect, strengthen, maintain, and keep in repair and otherwise improve any sea wall or breakwater, levees, dikes, floodways ·and drainways, and to improve, maintain and beautify any boulevard erected in connection with such sea wall * * *." And Article 6831, so far as here relevant, reads: "Said county commissioners' court * * * shall have the power to impose such additional uses and burdens upon all streets, alleys, public highways and other public grounds as they may deem necessary for the location, erection, construction and maintenance of seawalls, breakwaters, levees, dikes, floodways and drainways, and to license, regulate or grant such additional uses of said seawalls, breakwaters, levees, dikes, floodways or drainways as will not impair their efficiency." The greater part of the seawall, the Boulevard, and its flanking sidewalks, was, under a proper exercise of the jurisdiction thus conferred upon the Commissioners' Court, constructed within the corporate limits of the City. Johnston v. Galveston County, Tex.Civ.App., 85 S.W. 511; Galveston

County v. Gresham, Tex.Civ.App., 220 S. W. 560.

■ For purposes of this appeal it is not necessary to go into detail in describing the way in which the seawall, Boulevard, and the sidewalks are constructed. The trial court filed conclusions of fact and law. The greater part of the seawall proper, of course, fronts on the Gulf, and the containing-wall parallels the seawall, and the space between the seawall and the containing wall is filled in with sand. Over the top of this sand-fill is constructed the pavement of the Seawall Boulevard, with its flanking sidewalks. The pavement of the Boulevard, and the sidewalks, protect the sand-fill from the action of the storm-waters which are cast up over the seawall. Anything that happened to the pavement of the Boulevard or sidewalks, such as breaking holes in them, which would have the effect of subjecting the sand-fill to the action of the storm waters, and its consequent washing away, and undermining of the pavement, would not only result in great expense to repair and restore the Boulevard, but it would interfere with the efficiency of the barricade as planned and constructed. The jurisdiction to protect and maintain the seawall, the Boulevard and its flanking sidewalks is thus expressly committed to the Commissioners' Court; and this duty and function to so protect and maintain is a governmental one.

■ On the other hand, the Boulevard, though the land upon which it is erected belongs in fee simple to the County, and though it be not depicted upon any map as a street of the City of Galveston, is unquestionably (so far as here involved) a street within the City of Galveston, and a heavily travelled one. The County makes no contention that the City hasn't jurisdiction to police the vehicular traffic upon the Boulevard, or the pedestrian use of the adjacent sidewalks.

In the exercise of its police jurisdiction over the traffic upon a part of the Boulevard, the City proposed to install parking meters, whereupon the County brought suit to restrain it from so doing. Upon the trial, the City introduced evidence from which it could have been reasonably inferred that the parking meters as installed would not endanger the efficiency of the seawall or the supporting Boulevard with its sidewalks which protect against the storm waters of the Gulf. The parking meters if permitted to be installed were to be placed upon rust-proof standards welded to circular bases about six inches in diameter, which were in turn to be fastened upon the sidewalks by four lag screws, each one-half inch in width, and were to be inserted in a malleable iron expansion shield extending into the pavements and above such base there was to be placed a decorative flange secured by a specially designed lock screw, through which the standards would extend upwards, the standards being about forty inches in height, and the meters to be placed on their tops to be about twelve inches in height, cup grease to be used on both the lag screws and the set screws when they were installed,—the lag screws to be only two inches in length. The City contended that the meters thus installed would not constitute hazards to the strength of the seawall, or the sand-fill, etc., first because they were readily removable in the event of an approaching hurricane; and when removed would leave only four small holes of about three-quarters of an inch in diameter, and about two and a half inches in depth, with the metal shields in them to prevent the entry of water to the sand-fill, and second, that if a standard could not be readily detached it could be knocked down by pulling the lag screws from the holes without tearing up the pavement, and the holes would be too small to allow water to the sand-fill, and thus undermine the pavement. It was shown that it is always known pretty far in advance if a storm is approaching in the direction of Galveston; that it is usually known two or three days in advance if there is any danger of being struck by a storm. The evidence of the County was to the effect that logs and trees and other debris would be washed over the seawall by the storm waters which might be caught and held by the meters against the pavement, holes might be made in the pavement and allow the water to get to the sand-fill or the meters would be torn up by the debris being forced there against, and make holes in the pavement or walks and thus enable the storm waters to undermine the pavement and sidewalks.

The learned trial judge found that it was difficult to predict what objects would stand or be destroyed, or the manner in which destruction would be accomplished, by the pounding of wind and waves during a hurricane. He found that the County

Commissioners and the County Engineer were sincere in their opinion that the meters, if installed, would endanger and constitute a hazard to the safety of the Boulevard during a major storm, and that they had, in good faith in the exercise of their discretion, come to this conclusion. But he found further that it was difficult and unsatisfactory to make a finding on such a theoretical point, on which experts differ, and in effect declined to find as a fact whether the installation of the meters would endanger the safety of the Boulevard; he found that the evidence produced by the County was insufficient to convince him of the anticipated destruction in time of storm, but expressed the opinion that the parking meters would be torn from their base before they could cumulate appreciable debris, without breaking up or cracking the concrete through to the sand-fill. He concluded as a matter of law, in effect, that the determination of the County Commissioners in the exercise of the discretion vested in them to protect, etc., the Boulevard, that the erection of the parking meters would endanger the seawall under the facts of this case, was binding on the Court.

The City predicates its appeal on these two points:

"1. The City was improperly enjoined from the erection of the parking meters upon the sidewalks adjacent to the Seawall Boulevard as an aid in the performance of its duty to regulate and control vehicular traffic upon the Boulevard as one of the streets within the City Solely upon the ground that the determination of the Commissioners' Court of Galveston County that the parking meters should not be installed thereon was conclusive of the question as to the authority of the City to install them.

"II. The erection and maintenance of the seawall with its adjacent Boulevard and sidewalks by Galveston County in which the legal title thereto stands and the fact that the Boulevard and its sidewalks were constructed and are maintained by Galveston County as protections to the seawall are insufficient grounds upon which to enjoin the City from using the parking meters in the performance of its duties in the regulation of vehicular traffic upon the Boulevard as one of the public streets within its limits in the absence of a finding by the Court that the installation and use of such meters will in fact seriously affect the efficacy of the Boulevard and its sidewalks as protections to the seawall, the limitation of the City's jurisdiction over traffic control being dependent upon the existence of such fact and not merely upon the judgment of the Commissioners' Court relative thereto."

■ The right of a City Council to establish reasonable traffic regulations includes, of course, the right to decide that the installment of parking meters in certain localities where the traffic is dense is a reasonable traffic regulation and pass an appropriate ordinance to effect such regulation, and such decision is treated as controlling on the courts, unless the unreasonableness of the ordinance is fairly free from doubt. Harper v. City of Wichita Falls, Tex.Civ.App., 105 S.W.2d 743, writ refused. The determination by the City to install the proposed parking meters at the proposed places on Seawall Boulevard within the City of Galveston is a determination by the City of the reasonableness of so regulating traffic at such points.

■ The right of a County Commissioners' Court, within the sphere of its jurisdiction over the seawall, etc., to make decisions relating thereto which will be binding upon the courts is certainly no less than is the right of a City Council to make decisions within the sphere of its jurisdiction which are binding upon the courts. The Seawall Boulevard, at the points thereof involved here, is subject both to the authority of the City Council acting within the sphere of its jurisdiction and to the authority of the Commissioners' Court acting within the sphere of its jurisdiction. The City Council, purporting to act within the sphere of its jurisdiction, has decided that the installation of the proposed parking meters constitutes a reasonable traffic regulation upon the Boulevard. The Commissioners' Court, purporting to act within the sphere of its jurisdiction, has decided that the proposed installation of parking meters is an unreasonable use of the Boulevard in that it will endanger the efficiency of the seawall and the safety of the Boulevard in case of a major storm. Thus we have a conflict of jurisdiction.

■ However, in the very nature of things, the jurisdiction of the County Commissioners' Court and that of the City Council over the Boulevard are reconcilable. That is to say, the City Council

is a governmental body having jurisdiction over the Boulevard to serve certain purposes of the State and the Commissioners' Court is a governmental body having jurisdiction over the Boulevard to serve certain other purposes of the same State, and the State cannot be taken as holding conflicting purposes relative thereto. Now the primary purpose for which the Boulevard was constructed was that it should serve to protect, support and brace the seawall. Indeed, the seawall and the containing-wall, together with the Boulevard, inclusive of the sand-fill and the covering pavement and cement walks, form component parts of a complex whole; and such whole is primarily dedicated to being used as a barrier to storm waters from the Gulf, and to this use it must be primarily devoted. The right therefore of the public to the use of the Boulevard as a street or highway within the City of Galveston is subordinate and inferior to the right of its use as an integral part of the barrier erected against storm waters from the Gulf. So, when the Commissioners' Court decided that the proposed installation of the parking meters would constitute a lessening of the efficiency of the Boulevard as a barrier against storm waters in the event of a major storm, it was unquestionably acting within the sphere of its jurisdiction. That is not to say that the City Council was not acting within the sphere of its jurisdiction when it decided to install the parking meters; but that the jurisdiction of the City, which in this instance serves but a subordinate right of the public, must yield to the jurisdiction of the Commissioners' Court which in this instance serves a superior right of the public.

It follows that, when the jurisdiction of the City has yielded to the jurisdiction of the County relative to the determination of whether or not the parking meters should be installed on the Boulevard, and such fact is made to appear to the Court, the Court must treat the determination made by the City as beyond the sphere of its jurisdiction or at least as having been superseded, and the determination made by the County as being within the County's jurisdiction. Consequently, the court is not in the position of being required to weigh the reasonableness of the determination by the City to the effect that the parking meters is a proper use of the Boulevard against the reasonableness of the determination by the County to the effect that the proposed installation will lessen the Boulevard's efficiency as a barrier against storm waters in a major storm. The mere occurrence of the conflict of jurisdiction with reference to this particular determination by the County apprises the Court that the jurisdiction of the City has yielded to that of the County. However the determination by the County, acting within the sphere of its jurisdiction, is not necessarily conclusive upon the courts, and we do not understand that the trial court so held. Such determination can be challenged as being so unreasonable, fanciful and arbitrary, as to be void. But, as against such challenge, if it be made to appear that such determination is supported by substantial evidence, as contradistinguished from a preponderance of the evidence on the one hand, or the mere scintilla of evidence on the other, such determination will not be held void. The Court in effect found, as appears above, that the City failed to prove there was no substantial evidence to support the County's determination.

It is not necessary to adjudicate the point whether, in making the determination, the Commissioners' Court exercised quasi-administrative, quasi-legislative, or quasi-judicial power.

No reversible error of law being made to appear, and no abuse of discretion by the trial court having been shown in the granting of the temporary injunction, the judgment of the court below will be affirmed.

Affirmed.