Don PAYNE, et al., Appellants,

v.

CITY OF GALVESTON, et al., Appellees.

No. B14–87–00793–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 11, 1989.
Rehearing Denied June 15, 1989.

Kevin Dubose and Jim M. Perdue, Houston, for appellants.

John Eckel, Scott Lyford, Galveston, and W. Page Keeton, Austin, for appellees.

## OPINION ON MOTION FOR REHEARING

ROBERTSON, Justice.

On motions for rehearing filed by both Galveston County and the City of Galveston and having heard oral argument en banc, we withdraw our original opinion of August 18, 1988, and substitute the following therefor.

Summary judgments were granted in favor of both appellees in this case. Appellant Don Payne, individually and as next friend of Heather Payne, filed suit under the wrongful death and survival statutes against the City of Galveston (the city), Galveston County (the county) and others for damages arising out of the deaths of their wife/mother, Mrs. Judy Payne, and ten year old daughter/sister, Meredith Payne, which occurred during the Illinois family's 1984 summer vacation in Galveston.

The Paynes had been in Galveston visiting relatives, shopping and fishing for two or three days before the accident. During this period of time they had walked along the seawall and had observed the sharp drop-off and the boulders at the base of the seawall. On the day of the accident, the Paynes observed other people riding surreys on the seawall and they, then, rented two surreys. Mrs. Payne and Meredith rode in one and Mr. Payne and Heather rode in the other. After riding about a quarter of a mile on the side of Seawall Boulevard opposite the gulf, they crossed the boulevard and rode on the sidewalk along the edge of the seawall. Mr. Payne and Heather were in the lead. After travelling for some distance Payne heard his wife scream "Meredith"; he turned to see the surrey in which his wife and daughter were riding go over the edge of the seawall. Mrs. Payne and Meredith both suffered head injuries from which they died.

The plaintiffs' causes of action against the city and the county rely on the theory of premises liability and the waiver of sovereign immunity in the Tort Claims Act, Chapter 101 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, which establishes governmental liability for "personal injury and death so caused by a condition or use of ... real property...." Payne alleged seven acts of negligence:

(1) In failing to properly maintain the guard rail which had been previously erected along the edge of the Seawall;

(2) In failing to have in place a guard rail along the Seawall in the area where the incident occurred, on the occasion in question;

(3) In failing to have appropriate safety, protective or other restraining devices along the edge of the seawall in the area in question;

(4) In failing to have in place striping to designate lanes of travel on the seawall;

(5) In failing to warn of the dangers arising out of the use of surreys on the Seawall;

(6) In allowing the use of surreys on the Seawall;

(7) In failing to restrict the use of surreys to areas of the Seawall which were properly protected and equipped

with restraining devices, guard rails or other safety devices.

Payne also specifically alleged the seawall to be a special defect as that term is used in § 101.022 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE.

Both the city and the county answered with a special plea of governmental immunity. Following extensive discovery, the county first moved for summary judgment. The basis for its motion was that under the Tort Claims Act, it did not violate any duty owed to the Paynes, as licensees. Later the city filed its motion for summary judgment asserting sovereign immunity and the fact that the seawall is neither owned nor maintained by the city. Alternatively, the city asserted that what little control it does have over the area is "traffic control," a governmental function. Therefore, its liability, if any at all, is limited by the Tort Claims Act. Judge Harris granted the motion of the city and, approximately one month later, Judge Dalehite granted the motion of the county. Neither order specified the basis upon which it was granted. Orders of severance were signed to finalize each judgment. Payne appeals.

Some background information on the Galveston seawall may be helpful in understanding the relative positions of the parties. The seawall and its containing wall, along with Seawall Boulevard and its flanking sidewalks, form component parts of a complex defensive barrier erected against the storm waters of the Gulf of Mexico. The original barrier was erected in 1902–04 by the county under authority of Articles 6830 and 6831 of the REVISED CIVIL STATUTES empowering counties and cities bordering on the gulf to construct seawalls, etc., as storm protection measures. The sixteen foot tall concrete monolith, which is the seawall, fronts the gulf and parallels it for more than ten miles; it in turn is paralleled and supported by a containing wall behind it. The space between the containing wall and the seawall is filled in with sand. The pavement of Seawall Boulevard and its adjacent sidewalks was constructed over the top of this sand-fill to protect it from the action of waters which wash over the seawall in a storm. The structural integrity of the seawall itself depends upon the pavement's preventing erosion of the sand-fill. The seawall, which is sixteen feet wide at the base, tapers to an approximate width of five feet at its top. The adjacent sidewalk atop the sand-fill is ten to fifteen feet wide. It abuts but does not cover the top of the seawall. The boulevard adds another seventy-five feet to the width of the structure. On the beach at the base of the seawall are piles of granite and limestone boulders, called "rip-rap", which stabilize the sand at the base of the wall from erosion. Although a guardrail was added to the original portion of the seawall shortly after its construction, the railing was not maintained and years ago it deteriorated and was not replaced. Today, the edge of the wall is unmarked and unprotected. The area atop the seawall formed by the sidewalk and the seawall itself is widely used for recreational activities. Citizens and tourists alike walk, jog, bicycle, skate and sunbathe on the pavement. Concessions, shops and restaurants abound.

A summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Lower Neches Valley Authority v. Murphy*, 536 S.W.2d 561, 563 (Tex.1976); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972). The burden of proof is on the movant, and all doubt as to the existence of a fact issue is to be resolved against him. *Roskey v. Texas Health Facilities Commission*, 639 S.W.2d 302, 303 (Tex.1982) *per curiam*. Summary judgment on an affirmative defense is proper only if the movant establishes conclusively all the elements of the defense as a matter of law. *Montgomery v. Kennedy* 669 S.W.2d 309 (Tex.1984). Once the defendant establishes his right to judgment, the plaintiff can prevail by showing that an issue of fact exists as to one or more of those elements. *Byrd International of Dallas, Inc. v. Electronic Data Systems Corp.*, 629 S.W.2d 177, 178 (Tex.App.—Dallas 1982, writ ref'd n.r.e.).

The standard of review of a summary judgment by an appellate court is set forth in *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–549 (Tex.1985) as follows:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor.

## SUMMARY JUDGMENT FOR GALVESTON COUNTY

Payne claims in his first point of error that summary judgment for Galveston County was improper because fact issues exist as to the liability of the county under the Texas Tort Claims Act. Payne asserts that under the duty imposed by § 101.022(b) of the Act, the county is liable for its failure to warn his family of the "special defect" presented by the seawall; that even if the seawall is not found to be a special defect, the county's failure to continue to install and maintain safety railings constituted a breach of its duty to a licensee under § 101.022(a) not to injure the licensee through gross negligence. Furthermore, Payne alleges the county was negligent in failing to restrict or regulate the use of surreys on the seawall or to designate lanes of travel thereon. Payne also contends that questions of fact are raised by virtue of the county's claim that it does not have sufficient control over the seawall to impose upon it any duty to users of the area.

In addition to its position that the city controls the premises, the county contends that the seawall is not a special defect as a matter of law, and that the open and obvious nature of the dangerous condition negates any duty on its part and therefore precludes a finding of negligence or gross negligence.

Texas Civil Practice and Remedies Code, Chapter 101, the Texas Tort Claims Act ("the Act"), defines the liability of a governmental unit relevant to Payne's claims as follows:

Sec. 101.021. Governmental Liability

A governmental unit in the state is liable for:

(2) personal injury and death so caused by a condition or use of ... real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Sec. 101.022 Duty Owed: Premise and Special Defects

(a) If a claim arises from a premise defect, the governmental unit owes to the claimant *only the duty that a private person owes to a licensee on private property*, unless the claimant pays for the use of the premises.

(b) *The limitation of duty in this section does not apply to the duty to warn of special defects* such as excavations or obstructions on highways, roads, or streets or to the duty to warn of the absence, condition or malfunction of traffic signs, signals, or warning devices as is required by Section 101.060. Tex.Civ. Prac. & Rem.Code §§ 101.021, 101.022. (Emphasis added.)

■ We first address appellants' contention that the seawall is a special defect. Of course, if the seawall is a special defect, the county was under the duty to warn of the defect. The statute does not define the term; instead it gives examples of what a special defect is—i.e. "such as excavations or obstructions on highways, roads or streets." The supreme court has stated that these two examples were not meant to be exclusive but by applying the ejusdem generis rule "we are to construe 'special defect' to include those defects of the same kind or class as the ones expressly mentioned." *County of Harris v. Eaton*, 573 S.W.2d 177 (Tex.1978). Since *Eaton*, Texas courts have found the following to be special defects: a large hole in the roadway (*Eaton*); two feet of floodwater covering a low water crossing on a roadway in predawn darkness (*Miranda v. State*, 591

S.W.2d 568 (Tex.Civ.App.—El Paso 1979, no writ); slick, muddy portion of a highway which was being resurfaced (*State v. McBride*, 601 S.W.2d 552 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.); a condition created by thick brush hiding an arroyo running alongside a park road and an unmarked break in the brush appearing to be an intersecting road, but which was in fact a drop-off into the arroyo (*Chappell v. Dwyer*, 611 S.W.2d 158 (Tex.Civ.App.—El Paso, 1981, no writ). In each of these instances the special defects involved the roadway and were "kinds of dangerous conditions against which the legislature intended to protect the public." *Eaton* at 179. Further, in none of the instances were the defects readily apparent to the person injured. In the case before us there are two glaring differences. First, the drop-off of the seawall is not on the roadway but is separated from it by twenty feet of unobstructed sidewalk, and the dangerous condition is observable by everyone. Second, the summary judgment evidence shows that the Paynes had walked along the seawall for "maybe a half hour or hour" on the day previously; they had observed the large drop-off and the rocks beneath the drop-off; that Mr. Payne testified he did not need anybody to warn him of the hazard of the drop-off, that it was readily apparent to "anybody that's got two eyes and a good mind" and that he believed it was readily apparent to his wife. We hold that under the facts of this case the seawall is not a special defect as a matter of law. Therefore, the county was not obligated to warn the Paynes of the danger of this readily apparent dangerous condition.

■ Furthermore, we find that the seawall is not a *defect* from which the public deserves protection, but a unique *condition* designed to protect the public from the dangers of storm waters. However, it is undisputed that the Paynes were licensees. Therefore, whether the seawall is a regular defect or merely a condition of real property, the county's duty to warn or make safe would arise only if the summary judgment evidence shows that the county had knowledge of the hazard but the

Paynes did not. *Lower Neches Valley Authority v. Murphy*, 536 S.W.2d 561 (Tex. 1976); *State v. Tennison*, 509 S.W.2d 560, 562 (Tex.1974); *Weaver v. KFC Management, Inc.*, 750 S.W.2d 24 (Tex.App.—Dallas 1988, writ denied.). As stated above the summary judgment evidence on behalf of the county shows that the condition of the seawall is apparent to all. The Paynes did not submit any summary judgment evidence which raised a fact issue on whether they were aware of the danger of falling off the seawall. There being no fact issue, the trial court properly granted summary judgment for the county.

## SUMMARY JUDGMENT FOR THE CITY OF GALVESTON

In his second point of error, Payne claims that summary judgment for the City of Galveston was improper because there was a fact issue whether the city was liable for failure to maintain its streets and nearby areas in a safe condition.

■ In order to predicate a duty on a theory of premises liability, it is necessary to determine whether the governmental unit is a "possessor" by virtue of ownership, occupation or control of the premises or creation of the defect which allegedly caused the injury. *City of Denton v. Van Page*, 701 S.W.2d 831, 834–835 (Tex.1986); *Vela v. Cameron County*, 703 S.W.2d 721, 723 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *Marshbank v. Austin Bridge Co.*, 669 S.W.2d 129, 133 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

■ We believe that *City of Galveston v. Galveston County*, 159 S.W.2d 976 (Tex.Civ.App.—Galveston 1942, writ ref'd) settled the issue of who controls the seawall. Unquestionably the city maintains control over *traffic* on the street, but even that right is subordinate to the right of the county to control the use of the seawall "as an integral part of the barrier erected against storm waters from the Gulf." *City of Galveston*, 159 S.W.2d at 980. Unless the city was in control of the maintenance of the *seawall*, it simply owed no duty to "discover any dangerous condition

existing on the premises." *City of Denton v. Van Page,* 701 S.W.2d at 834.

The facts here are closely analogous to those in *Wiley v. City of Lubbock,* 626 S.W.2d 916 (Tex.App.—Amarillo 1981, no writ). There a five year old child was struck as she crossed Loop 289 "at or about the place where Avenue U intersects, but does not cross over or under, the highway in the City." In a resulting suit for damages it was contended the city was negligent in failing to provide adequate crosswalks, failing to provide guards to prevent children from attempting to cross over the highway and failing to post signs prohibiting pedestrians from crossing. The summary judgment evidence showed that Loop 289 was constructed by the State of Texas on a right of way owned by the state. The evidence further showed that the city had nothing to do with the design or construction of the freeway and, except for enforcing traffic laws on it and furnishing street lighting, the city had no obligation for or control over the freeway.

In affirming a summary judgment in favor of the city, the Amarillo court held that the city, lacking any control or authority over the highway, owed no duty to the child. This is analogous to the facts of this case. The county owned the seawall, maintained it and Seawall Boulevard as an integral part of the seawall. The city only regulates traffic on the boulevard, provides police protection and provides some restroom facilities and trash collection. The city had nothing to do with the design or construction of the seawall. Since it lacked any control over the *seawall,* it owed no duty to the Paynes to make the seawall safe.

The close proximity rule, which extends a government's liability to dangerous conditions off the road, which injure those using the roadway, should have no application to this case for two reasons. *Jezek v. City of Midland,* 605 S.W.2d 544 (Tex.1980); *City of Houston v. Jean,* 517 S.W.2d 596 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.). In the first place, the policy of the rule is to protect users of the roadway by extending liability to include part of the municipality. But here, the city's liability should not be extended to include maintenance of the seawall simply because the county, which controlled maintenance, would not be liable to a licensee. The city is precluded from altering the condition of the seawall and should not be held liable for injuries resulting from that condition. Secondly, the close proximity rule does not apply because the seawall is not a defect from which the public deserves protection, but a necessity. For these reasons, summary judgment as to the city was proper.

We affirm the summary judgment.

ELLIS, Justice, dissenting on motion for rehearing.

Finding myself in disagreement with the majority members of the court, I record my respectful dissent. The majority grants the motions for rehearing filed by the City and County of Galveston and affirms the summary judgments in favor of those governmental entities. I would overrule the motions for rehearing filed by the City and County of Galveston and reverse and remand this case for a trial on the merits for four reasons:

I. As a matter of law and statutory construction, the seawall is a "special defect" as that term is used in the Texas Tort Claims Act, TEX.CIV.PRAC. & REM. CODE ANN. § 101.022(b);

II. The majority's holding that the "open and obvious" nature of the danger presented by the seawall negates any duty on the part of the City or County improperly reinstates the doctrine of assumption of the risk as an absolute bar to suit;

III. The existence of questions of material fact regarding the two governmental entities' control of the premises preclude summary judgment; and

IV. Assuming findings of fact sufficient to support a conclusion of some control on the part of the City, fact questions exist regarding the City's breach of the duty triggered by that control.

Galveston County erected the seawall and its containing wall along with Seawall Boulevard and its flanking sidewalks as a

barrier for storm protection. Seawall Boulevard and its adjacent sidewalks were constructed to protect the sand-filled space between the seawall and its containing wall from erosion. The structural integrity of the seawall depends on the pavement's prevention of erosion of the sand-fill. The sidewalk on top of the sand-fill is ten to fifteen feet wide and abuts, but does not cover, the top of the seawall. However, except for a seam between the seawall and the sidewalk, the two surfaces are indistinguishable and function as a single sidewalk. The area atop the seawall formed by the sidewalk and the seawall itself is widely used for recreational activities. Although a guardrail was added to the original portion of the seawall shortly after its construction, the railing was not maintained and, when it eventually deteriorated, was not replaced. Today, the edge of the wall is unmarked and unprotected.

Payne asserts that under the duty imposed by § 101.022(b) of the Act, the county is liable for its failure to warn his family of the "special defect" presented by the seawall of which the county was aware.[1] The county contends that the seawall is not a special defect as a matter of law. TEXAS CIVIL PRACTICE AND REMEDIES CODE ANNOTATED, chapter 101, the Texas Tort Claims Act ("the Act"), defines the liability of a governmental unit relevant to Payne's claims as follows:

Sec. 101.021. Governmental Liability

A governmental unit in the state is liable for:

(2) personal injury and death so caused by a condition or use of ... real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Sec. 101.022. Duty Owed: Premise and Special Defects

(a) If a claim arises from a premise defect, the governmental unit owes to the claimant *only the duty that a private person owes to a licensee on private property*, unless the claimant pays for the use of the premises.

(b) *The limitation of duty in this section does not apply to the duty to warn of special defects*, such as excavations or obstructions on highways, roads, or streets or to the duty to warn of the absence, condition or malfunction of traffic signs, signals, or warning devices as is required by Section 101.060. (Emphasis added.)

TEX.CIV.PRAC. & REM.CODE ANN. §§ 101.021, 101.022.

While the applicable law in common law premises cases depends upon the relationship between the owner or occupier of the premises and the injured person, under the Tort Claims Act the applicable law depends on the type of defect involved. When dealing with a *regular* premises defect under subsection (a), as opposed to the *special* defect referred to in subsection (b), the relationship between the governmental unit and the plaintiff is that of licensor to licensee. TEX.CIV.PRAC. & REM.CODE § 101.022(a); *Mendoza v. City of Corpus Christi*, 700 S.W.2d 652, 654 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *Vela v. Cameron County*, 703 S.W.2d 721, 724 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). According to Texas law, where neither knows of a dangerous condition, the duty owed by a licensor to a licensee is not to injure him through willful, wanton or gross negligence. *Rowland v. City of Corpus Christi*, 620 S.W.2d 930, 932–933 (Tex. Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). However, when the licensor has knowledge of a dangerous condition and the licensee does not, then this duty is expanded to include a duty either to warn the licensee of the known danger or to make the premises reasonably safe. *Lower Neches Valley Authority v. Murphy*, 536 S.W.2d 561, 562–563; *Rowland v. City of Corpus Christi*, 620 S.W.2d at 934.

Therefore, if the Galveston seawall were a *regular defect*, the majority might be correct in holding that the County as li-

---

1. In the two and one half years preceding the Paynes' accident the County Emergency Medical Service recorded 40 accidents involving falls from the wall. There were no records in the summary judgment proof on the number of such injuries which were not handled by the County EMS ambulances.

censor has no duty to the Paynes as licensees other than to refrain from injuring them through gross negligence. "If the case involves a regular premise defect, the defendant is held to a *lesser duty* of care—the duty of a licensor *as opposed to an ordinary negligence duty.*" (Emphasis added.) *Miranda v. State*, 591 S.W.2d 568, 570 (Tex.Civ.App.—El Paso 1979, no writ).

As *Miranda* suggests, however, in the case of a *special* defect the rule is different, and the limitation of the government's liability to that of a licensor does not apply. TEX.CIV.PRAC. & REM.CODE § 101.022(b); *County of Harris v. Eaton*, 573 S.W.2d 177, 178–179 (Tex.1978). Instead the existence of a special defect imposes upon the governmental unit a greater duty of ordinary or reasonable care which is the same as the duty owed by a private person to an invitee. *County of Harris v. Eaton* 573 S.W.2d at 180; *City of Denton v. Van Page*, 683 S.W.2d 180, 194 (Tex.App.—Fort Worth 1985), *reversed on other grounds*, 701 S.W.2d 831 (Tex.1986). An owner or occupier owes the invitee a duty to give adequate warning of any defect or to make the premises safe. *Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452 (Tex.1972); *Rowland v. City of Corpus Christi*, 620 S.W.2d at 933.

Obviously, then, the extent of the duty owed by the County to Payne depends upon whether the Galveston seawall constitutes a special defect under the Tort Claims Act. Classification of the seawall requires construction of § 101.022(b) of the Act and its predecessor, Texas Revised Civil Statutes Annotated, article 6252–19, § 18(b), the operative language of which is essentially the same as that of § 101.022(a) and (b).

I. As a matter of law and statutory construction, the seawall is a "special defect" as that term is used in the Texas Tort Claims Act, Tex.Civ.Prac. & Rem. Code § 101.022(b).

While the county argues that a special defect must necessarily be an excavation or obstruction, the supreme court has recognized that excavations or obstructions are mentioned in the statute only as examples of special defects. The two examples are not exclusive and do not exhaust the class. *County of Harris v. Eaton*, 573 S.W.2d at 179. The phrase "such as" used in preface to the naming of "excavations or obstructions" also supports this reasoning. While no clear definition of the term exists, the *Eaton* court further states that special defects are generally those "kinds of dangerous conditions against which the legislature intended to protect the public. *Id.* at 179. *Sutton v. State Highway Department*, 549 S.W.2d 59, 61 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.) further defines a special defect as a condition which may have been "specially created" and which is "not a routine maintenance defect." Contrary to the position taken by the majority, no case has held that a defect must be hidden before it can be considered "special."

In addition, other conditions besides excavations and obstructions have been held to be special defects. *See County of Harris v. Dowlearn*, 489 S.W.2d 140 (Tex.Civ. App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.), unattached wall panel in county courthouse; *State v. McBride*, 601 S.W.2d 552 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.), slick mud on highway as the result of construction; *City of Austin v. Cooksey*, 561 S.W.2d 874 (Tex.Civ.App.—Eastland 1978) *reversed on other grounds*, 570 S.W.2d 386 (Tex.1978), improperly set light pole. While not controlling, it is also interesting to note that in *City of San Antonio v. Hamilton*, 714 S.W.2d 372 (Tex.App.—San Antonio 1986, no writ), the city claimed that a low-water crossing which it allegedly constructed in a negligent manner was a special defect in regard to which it had given adequate warning. (The court found that construction of the bridge was a proprietary function which took the case out of the Tort Claims Act and so did not address the question of special defect.) Since the proviso of § 101.022(b) was meant to *enlarge* the liability of the governmental unit in certain instances, there is no basis for the conclusion that the definition of special defect would be more narrow than the definition of dangerous condition or regular defect. *County of Harris v. Eaton*, 573 S.W.2d at 180.

It is also logical to conclude that the danger presented by the seawall is the type of danger against which the legislature intended to protect the public. Recent amendments to the Tort Claims Act, notably the addition of § 101.0215, effective September 2, 1987, specify numerous governmental functions for which absolute governmental immunity is waived under the Act. Although this section was adopted after Payne's cause of action arose, it is relevant to a consideration of legislative intent regarding those dangers for which the government must take responsibility and from which the public is entitled to be protected. The list includes bridge construction and maintenance and the establishment and maintenance of parks, dams, and recreational facilities including beaches.

The unique structure of the seawall, which is central to Galveston's tourist area, must be encountered by anyone approaching the beach. Indeed, its topside is part of a wide, inviting concrete area passageway running parallel to the gulf and beach below; it is used extensively by adults and children not only as a necessary pedestrian crossing place for access to the beach but as an area of enjoyment itself for walking, jogging, cycling, sunning, and other activities associated with a coastal tourist area. While it is not a dedicated park, the seawall is heavily used as a park-like recreational area. It poses the physical dangers of a bridge in terms of its height and steep drop off. It is intended to act as a dam to hold back flood waters in a storm. And, in the terms employed by the legislature in drafting § 101.022(b), although it was created by a building up rather than a digging out, it presents the same danger as that presented by an "excavation" to one who encounters it. It is a man-made, unnatural alteration of the normal level of the surface which results in a steep drop off at its unprotected gulfside edge. In at least five respects it poses a far greater potential for danger than the surface alteration created by an excavation: (1) its paved concrete topside walkway is used extensively for recreation by people of all ages; (2) it is accessible day or night and under almost all weather conditions including fog, rain, and wind, short of a hurricane; (3) it is ten miles long; (4) its sixteen-feet steep drop off ends at the bottom with numerous large, sharp-edged limestone and granite boulders; and (5) it is permanent. In sum, its nature and location at the gulf beachside makes it an interesting and inviting draw for people to engage in numerous social activities on its surface, thus increasing its potential danger to the public far beyond that of the usual man-made excavation. The majority opinion aptly describes it as a "sixteen-foot concrete monolith." We would add to that description "which the public is drawn to and encouraged to enjoy, and which in turn benefits the economies of the city and county." The widespread recognition of the dangers such structures present to the public is further underscored by the expert testimony offered as summary judgment proof by Payne. Payne's expert testified that he had visited 90% of the public waterfront areas in the United States and that the Galveston seawall is the only structure of its type in the country which is completely lacking in safety features.

The majority opinion is grounded on the assumption that an object such as the seawall which is constructed and used for a necessary purpose cannot be a special defect from which the public deserves protection, but rather it is "a unique condition designed to protect the public from the dangers of storm waters." That the seawall is a necessity is indisputable. But the fact that a defect, or dangerous condition, is created for a worthy or necessary purpose is irrelevant to the analysis as to whether liability is to be imposed under the Texas Tort Claims Act. Bridges, elevated walkways, and other such necessary and worthwhile projects are constructed by governmental entities, but their necessity does not per se relieve the governmental entities from liability for injury caused by their failure to construct guardrails, warning signs, and other safety measures required to protect the public.

In this regard, the majority opinion seems to find the word "defect" or "special

defect" inapplicable in its normal definition or use to describe an entity such as the seawall created to protect the public. It is true that in the normal use of the word, defect, it would not be used to describe something constructed for the benefit of the public. But in the context of this case, we are not dealing with the meaning of a "defect" in its ordinary use. Rather, we are examining it in the context of the seawall as to its statutory and precedential meaning as a "dangerous condition." The seawall created a dangerous condition because it required a permanent and significant alteration of the normal level of the surface over which the public is implicitly invited to walk and use recreationally. Because of this dangerous condition to which the public is exposed and, indeed, invited, liability for personal injuries caused thereby may be imposed on the entity responsible for it if the legal requisites are satisfied.

There is ample precedent in normal premises liability cases for the proposition that just about any dangerous condition on real property is a defect for purposes of imposing liability regardless of its utility to the owner or occupier of the property. *See, e.g., Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex.1978) (Darkened stairwell found to be a dangerous condition); *Coffee v. F.W. Woolworth Co.*, 536 S.W.2d 539 (Tex.1976) (Owners of store created dangerous condition by leaving merchandise platform in aisle where customer could injure herself); *Wal–Mart Stores, Inc. v. Lerma*, 749 S.W.2d 572 (Tex.App.—Corpus Christi 1988, no writ) (Store clothing racks considered dangerous condition when children played on them). The definitional emphasis in law is on the "dangerous condition" created, and not on the generic meaning of the term "defect." The term "defect" in its normal everyday context means an imperfection, a flaw. WEBSTER'S NEW COLLEGIATE DICTIONARY 294 (1981). If the legal definition of defect for premises liability purposes can be analogized to the normal definition, it means an imperfection in the sense that it is a dangerous condition on real property that has the potential to cause injury, and because of certain legally

relevant ties it has to the property owner, such as knowledge, the owner may be liable for the injury caused by it.

The term "special defect" as set out in the Texas Tort Claims Act apparently differs only in that it is created or under the control of a governmental entity, and its statutory definition which analogizes it to excavations and obstructions on roadways implies that it represents a greater potential hazard to the public and thereby imposes a special duty on the governmental entity to warn the public of its existence.

Based on the reasoning and authority set out above, I would hold that the dangerous condition presented by the Galveston seawall constitutes a special defect as a matter of law under § 101.022(b) of the Texas Tort Claims Act. As such, it triggers a duty on the part of the governmental unit which owns and/or occupies the premises to adequately warn of the danger or to make it reasonably safe. *See Marshbank v. Austin Bridge Company*, 669 S.W.2d 129 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.) and *City of Austin v. Cooksey*, 561 S.W.2d at 874 for the proposition that a duty to make safe arises when adequate warning is not possible. Breach of either duty raises questions of fact for a jury. Accordingly, the summary judgments should be reversed and the case should be remanded for trial.

II. The majority's holding, that the "open and obvious" nature of the danger presented by the seawall negates any duty on the part of the city or county, improperly reinstates the doctrine of assumption of the risk as an absolute bar to suit.

The majority holds that Payne is charged with knowledge of the danger presented by the seawall as a matter of law because the danger is "open and obvious." They then hold that this knowledge precludes any duty on the part of either governmental entity to warn the public of that danger. The effect of this reasoning is to reinstate the assumption of the risk doctrine as an absolute bar to suit which was abolished by the supreme court in 1975 in the landmark

case of *Farley v. M M Cattle Company*, 529 S.W.2d 751 (Tex.1975).

In *Parker v. Highland Park Inc.*, 565 S.W.2d 512 (Tex.1978), the supreme court extended its decision in Farley to premises liability cases and specifically abolished the "so-called no-duty concept" which previously had allowed the courts in premises cases to negate a defendant's duty upon a showing that the plaintiff had knowledge and appreciation of the danger he encountered. Equating this concept with a back-door application of the defensive doctrine of assumption of the risk as a bar to suit, the court held, in effect, that a plaintiff's knowledge of a danger is irrelevant to an assessment of the defendant's conduct:

> We now expressly abolish the so-called no-duty concept in this case and, as expressed in *Farley*, "henceforth in the trial of all actions based on negligence ..." the reasonableness of an actor's conduct under the circumstances will be determined under principles of contributory negligence. While this case arose prior to the adoption of the comparative negligence statute, in the trial of cases under that statute, one who is contributorily negligent is still entitled to have his negligence compared with that of the other participants in the event.... There are many instances in which a person of ordinary prudence may prudently take a risk about which he knows ... or that is open and obvious to him. His conduct under those circumstances is a matter which bears upon his own contributory negligence.... It is the established rule in this State that even where a person has knowledge, actual or imputed, of a defect, a question of fact as to negligence is presented unless it can be said, as a matter of law, that a person of ordinary care would not have incurred the risk.... Knowledge of some danger is not always appreciation of the amount of danger.... Negligence may still be a fact question when one knows or is chargeable with knowledge of danger....

*Parker v. Highland Park, Inc.*, 565 S.W.2d at 517, 520.

It cannot be said as a matter of law that a reasonable person would not encounter the risk of a surrey ride along the Galveston seawall. To the contrary, the idyllic setting and widespread recreational use made of the area belie the extent and allegedly obvious quality of the risk presented thereby. The record, in fact, reflects that the Paynes' previous observation of others operating surreys on the seawall is what motivated them to do so.

The majority position further ignores the fact that the accident in question may have been completely unrelated to any "knowledge" on the part of the Paynes themselves. The fact that a dangerous condition or defect is known does not make it any less a danger unless all the surrounding factors which may precipitate an accident are also known to the person in danger along with his or her knowledge of the defect or condition. Particularly, is this so as to the decedent, Mrs. Payne, as there is no evidence in the record as to what she actually knew or appreciated. It is possible that the steering mechanism of the surrey was defective in some way or that a wheel caught in a sidewalk crack, causing the parties to lose control. Perhaps a gust of wind, normally quite strong along the beachfront propelled the surrey over the side before either mother or daughter could react. As *Parker* suggests, "knowledge" and "appreciation" are not synonymous. To take a position that an open and obvious danger requires no warning and that plaintiff may be charged with "appreciation" of it is to suggest that the possibility of such "accidents" are within the contemplation of tourists who encounter a structure like the seawall for the first time. A posted warning of these dangers or one given at the time of surrey rental, however, might have made the tourists wary and encouraged them to stay to the far side of the sidewalk or the landward side of the street. Or it might have discouraged the family from taking a surrey ride at all. While a loss of some revenue might thereby result to the City, serious injuries and loss of life may be avoided. In addition, to argue for a liability scheme that turns upon identifying one factual concept as the cause of an

injury not only distorts the statutory intent to describe the governmental conduct subject to tort liability but also ignores that many causes contribute to any injury. *See* Note, *The Scope of Liability Under Section 3 of the Texas Tort Claims Act,* 55 TEXAS L.REV. 719 (1977), and footnote 25.

Finally, even if one ignores the concept of "appreciation" of the danger to hold that a licensee's mere knowledge of a dangerous condition negates a licensor's duty to warn, no case has held that an "open and obvious" danger negates the duty to warn of a *special defect.* Indeed, the explicit language of § 101.022(b) states otherwise:

> The *limitation* of duty in this section [to that of licensor/licensee by § 101.022(a)] *does not apply* to the duty to warn of special defects ... (Emphasis added.)

TEX.CIV.PRAC. & REM.CODE, § 101.022(b)

The majority's reliance on *Lower Neches Valley Authority v. Murphy,* 536 S.W.2d 561 (Tex.1976); *State v. Tennison,* 509 S.W.2d 560, 562 (Tex.1974); and *Weaver v. KFC Management, Inc.,* 750 S.W.2d 24 (Tex.App.—Dallas 1988, writ denied) is therefore misplaced. The summary judgment should be reversed and the case should be remanded for trial.

III. The existence of questions of material fact regarding each governmental entity's control of the premises preclude summary judgment.

In order to predicate a duty on a theory of premises liability, it is necessary to determine whether the governmental unit is a "possessor" by virtue of ownership, occupation, or control of the premises or creation of the defect which allegedly caused the injury. *Vela v. Cameron County,* 703 S.W.2d 721, 723 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *City of Denton v. Van Page,* 701 S.W.2d at 834–835; *Marshbank v. Austin Bridge Co.,* 669 S.W.2d 129, 133 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

Plaintiff has the burden of establishing such *facts* and securing jury findings as will support a legal conclusion of ownership, possession, or control. *Marshbank v. Austin Bridge Co.,* 669 S.W.2d at 133;

*Cameron County v. Velasquez,* 668 S.W.2d 776, 780 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); *Prestwood v. Taylor,* 728 S.W.2d 455, 459–60 (Tex.App.—Austin 1987, writ ref'd n.r.e.). Joint operation and control is possible. *Trinity River Authority v. Williams,* 659 S.W.2d 714 (Tex.App.—Beaumont 1983) *affirmed in part and reversed in part on other grounds,* 689 S.W.2d 883 (Tex.1985).

Where the government has *created* the condition, a duty at least to warn has consistently been held to exist. *See: Smith v. State,* 716 S.W.2d 177 (Tex.App.—El Paso 1986, writ ref'd n.r.e.). State which warned of slick conditions on roadway created by its resurfacing did not breach its duty to motorist. *Trinity River Authority v. Williams,* 659 S.W.2d 714 (Tex.App.—Beaumont 1983) *affirmed in part and reversed in part on other grounds,* 689 S.W.2d 883 (Tex.1985). Trinity River Authority had duty to warn of back currents created by its dam and to erect barrier cable. *State v. McBride,* 601 S.W.2d 552 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.). State had duty to warn of danger it created by its road repair project regardless of whether the condition created was regular or special defect. *City of Austin v. Cooksey,* 561 S.W.2d 874 (Tex.Civ.App.—Eastland 1978) *reversed on other grounds,* 570 S.W.2d 386 (Tex.1978). City that created dangerous condition by locating power pole on freeway construction area without adequate support was liable for death caused by pole when it fell. Because the Galveston County admittedly created the seawall, it had a duty to warn of the danger presented by the structure.

While each entity admits to having some jurisdiction and control over the seawall, the city and the county both rely on the case of *City of Galveston v. Galveston County,* 159 S.W.2d 976 (Tex.Civ.App.—Galveston 1942, writ ref'd), in supporting their separate positions that as a matter of law the other entity has the requisite jurisdiction to trigger responsibility for the safety of the persons using the seawall. Indeed, if the jurisdictional positions of the city and county were accepted as valid,

liability for personal injuries on the topside of the seawall would exist in a kind of jurisdictional vacuum, attaching to neither entity. Each entity's control would fall just short of the necessary mark to trigger liability. However, while establishing that the jurisdiction of the county in its protection of the structural integrity of the seawall supercedes that of the city to make alterations which might undermine that integrity, that opinion is otherwise limited to its facts.

> Anything that happened to the pavement of the Boulevard or sidewalks such as breaking holes in them, which would have the effect of subjecting the sand-fill to the action of the storm waters, and its consequent washing away ... would interfere with the efficiency of the barricade as planned and constructed. · The jurisdiction to protect and maintain the seawall is thus expressly committed to the Commissioners' Court.... On the other hand, the Boulevard, though the land upon which it is erected belongs in fee simple to the County, and though it be not depicted upon any map as a street of the City of Galveston, is unquestionably (so far as here involved) a street within the City of Galveston, and a heavily travelled one. The County makes no contention that the City hasn't jurisdiction to police the vehicular traffic upon the Boulevard, or the pedestrian use of the adjacent sidewalks.... The Seawall Boulevard, at the points thereof involved here, is subject both to the authority of the City Council acting within the sphere of its jurisdiction and to the authority of the Commissioners' Court acting within the sphere of its jurisdiction.... [I]n the very nature of things, the jurisdiction of the County Commissioners' Court and that of the city Council over the Boulevard are reconcilable. That is to say, the City Council is a governmental body having jurisdiction over the Boulevard to serve certain purposes of the State and the Commissioners' Court is a governmental body having jurisdiction over the Boulevard to serve certain other purposes of the same State ... [T]he jurisdiction of the City, which *in this instance* serves but a subordinate right of the public, must yield to the jurisdiction of the Commissioners' Court which *in this instance* serves a superior right of the public.... However, the determination by the County, acting conclusive upon the courts.... Such determination can be challenged as being so unreasonable, fanciful and arbitrary, as to be void. (Emphasis ours.)

159 S.W.2d at 978–980.

The county built and owns the seawall and admits that it maintains the structure at least to some extent. The city admits to a traffic control function in regard to the automobile and pedestrian use of the boulevard and sidewalk which is contiguous with and virtually indistinguishable from the top of the seawall itself. In addition, one or both entities permit and benefit from the extensive recreational and commercial activity atop the length of the seawall. To what extent each entity regulates and controls the premises is a question of fact which must be resolved by the trier of fact before a legal conclusion can be drawn regarding the essential element of control in a premises liability case. Such issues of fact preclude summary judgment.

IV. Assuming findings of fact sufficient to support a conclusion of some control on the part of the city, questions of fact exist regarding the city's breach of the duty triggered by that control.

The common law duty dictated by the close proximity rule requires a city to keep the areas in close proximity to its streets in a safe condition. The duty extends to dangerous conditions outside the travelled portion of the street if it is probable that such defects will result in injury to those using the street. *Jezek v. City of Midland,* 605 S.W.2d 544 (Tex.1980); *City of Pasadena v. Freeman,* 731 S.W.2d 590 (Tex.App.— Houston [14th Dist.] 1987), *affirmed,* 744 S.W.2d 923 (Tex.1988); *City of Houston v. Turvey,* 593 S.W.2d 766 (Tex.Civ.App.— Houston [1st Dist.] 1979) *affirmed,* 602 S.W.2d 517 (Tex.1980); *City of Houston v. Jean,* 517 S.W.2d 596 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.). Liability for the city's breach, if any, of a duty

arising from a proprietary function is not limited by the Tort Claims Act.

In addition, at the very least, the city admits to a traffic control function on the seawall. Whether it breached its duty in regard to traffic control by its allegedly negligent failure to post signs, stripe lanes, install curbing or prohibit surrey traffic altogether is a question of fact for a jury. Breach of the duty arising out of this governmental function would subject the city to limited liability under the Act.

Payne contends that the city has control over signal light, curbs, garbage pick up, restrooms, planter boxes, beach access and all recreational activities on the premises. They point to deposition testimony by the city attorney that the city "controls all of it." Also, the record reflects evidence that the city issued a rental permit for the business that leased the surrey. And they cite the creation of the city's "Seawall Task Force" and its focus on seawall safety issues as further indicia of the city's control. While arguing that the south side is "simply structure", the city admits to a control over the businesses on the North side of the boulevard, which leaves additional questions of fact unanswered regarding regulation, if any of the tourist shops, restaurants, and at least one hotel which are on the South side of the street.

This evidence was surely sufficient to raise questions of fact which preclude summary judgment. Should the plaintiffs fail to establish sufficient facts to support a legal conclusion of control on the part of the city, then no duty could be imposed and the city's liability would be negated. However, summary judgment prior to a resolution of the question of control is improper. The summary judgment for the city should therefore be reversed and the case should be remanded for trial.

DRAUGHN, J., joins in this opinion.

MURPHY, Justice, dissenting on motion for rehearing.

Finding myself in disagreement with both the majority members of the Court and to some extent, Justice Ellis, I file this additional dissent.

## REGULAR DEFECT

Neither Payne nor the governmental units claim the seawall is not a regular defect. Therefore, as licensor, the County owed the Paynes a duty to warn them of an unknown danger. In its motion for summary judgment, the County argued that it did not violate any duty to the deceased plaintiffs because the summary judgment proof established that the obvious dangerous condition presented by the edge of the seawall was, by Mr. Payne's own admission, readily apparent to him and he thought it would be to his wife. In my view, the proof does not establish as a matter of law that Mrs. Payne and her daughter had knowledge of the hazard such as would relieve the County of its duty as a licensor to either warn a licensee of an unknown danger or make the premises reasonably safe. I agree with Justice Ellis that the issue of knowledge and appreciation on the part of Mrs. Payne and her daughter are questions of fact precluding summary judgment.

## SPECIAL DEFECT

I also disagree with the majority's position that classification of the seawall as special defect requires us to construe the Tort Claims Act.

Payne, in his sixth amended original petition alleged the seawall to be a special defect as that term is applied and used in § 101.022(b) of the Civil Practice & Remedies Code. In his response to the County's motion for summary judgment, Payne also asserted that the seawall was a special defect. As is the case with "dangerous conditions," the question of whether a condition is a "special defect" can be a jury question. *Turvey v. City of Houston*, 602 S.W.2d 517, 518 (Tex.1980); *State v. McBride*, 601 S.W.2d 552, 554 (Tex.Civ. App.—Waco 1980, writ ref'd. n.r.e.); *City of Austin v. Cooksey*, 561 S.W.2d 874, 881 (Tex.Civ.App.—Eastland 1978), *rev'd on other grounds*, 570 S.W.2d 386 (Tex.1978); *Smith v. State*, 716 S.W.2d 177 (Tex.App.— El Paso 1986, writ ref'd n.r.e.).

When the condition complained of is obviously an excavation or obstruction or a defect of the same kind or class *on* a highway, road or street and it is undisputed that the governmental unit created the condition or had actual knowledge of it, it can be said that the dangerous condition is a "special defect" as a matter of law giving rise to the duty to warn or make reasonably safe. *Miranda v. State*, 591 S.W.2d 568 (Tex.Civ.App.—El Paso 1979, no writ). However, when the condition complained of is not *on* a highway, road or street, the issue of whether the condition is a "special defect" is a question of fact to be determined by the trier of fact for the purpose of establishing the duty on the part of the governmental unit to warn of the condition or to make it reasonably safe. If the issue of constructive knowledge is raised by the facts, that issue is likewise a question of fact.

Here, since it is undisputed that the seawall was not *on* a highway, road or street, a fact issue exists. Constructive knowledge on the part of the county is not an issue because the seawall was created by the county. *State v. McBride, supra* at 558.

I am aware that in *County of Harris v. Eaton*, 573 S.W.2d 177 (Tex.1978), the supreme court invoked the ejusdem generis rule to find as a matter of law that an abnormally large hole which had reached the proportions of a ditch across the highway was a "special defect." I do not consider *Eaton* to be in conflict with the position that whether an excavation or obstruction or defect of the same kind or class *not on* a highway, road or street can be a *special defect* is a fact issue.

As movant, the County had the burden of showing that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. The County in its motion for summary judgment and in its brief supporting the motion failed to address the issue of whether the seawall constitutes a "special defect" or Payne's allegations under § 101.022(b).

In this case, the question of what duty, if any, the County owed to Payne depends on whether the seawall is a "special defect," which I would hold is a fact issue under the proof. Using the mandated standard for reviewing summary judgments, I would hold that by its failure to show as a matter of law that Payne could not succeed upon any theories pleaded, the County did not establish its right to summary judgment.

I recognize that when a trial court enters an order that does not state the grounds upon which it was granted, the party appealing must show that each of the independent arguments alleged in the motion is insufficient to support the order. *Netterville v. Interfirst Bank*, 718 S.W.2d 921 (Tex.App.—Beaumont 1986, no writ); *Brasher v. Carr*, 743 S.W.2d 674 (Tex.App.—Houston [14th Dist.] 1987), *rev'd on other grounds*, 32 Tex.Sup.Ct.J. 378 (May 10, 1989). However, I do not believe this rule applies where, as here, the County wholly fails to address in its motion for summary judgment, the Paynes' cause of action based on the allegation that the seawall is a "special defect." A defendant who moves for a summary judgment has the burden of showing as a matter of law that no material issue of fact exists as to the plaintiff's cause of action. *Griffin v. Rowden*, 654 S.W.2d 435, 435–36 (Tex.1983). Payne's pleadings and written response to the County's motion for summary judgment specifically pointed out to the trial court his claim that the seawall was a "special defect." As was made clear in *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979), the non-movant need not even file an answer or response to contend on appeal that the grounds expressly presented to the trial court by the movant's motion are insufficient as a matter of law to support summary judgment.

In his brief to our court, Payne specifically argues the County owed the Paynes a duty to warn of the "special defect" presented by the seawall and a fact issue existed regarding the county's fulfillment of its duty to warn of a "special defect." By his written response to the motion for summary judgment and his brief filed in our court Payne has shown that the

grounds presented by the County in its motion for summary judgment are insufficient as a matter of law to support the summary judgment.

I would reverse the summary judgment for the County on the grounds that the County failed to meet its burden to show as a matter of law that no material issue of fact exists as to Payne's cause of action under TEX.CIV.PRAC. & REM.CODE ANN. § 101.022(b).

## SUMMARY JUDGMENT FOR CITY OF GALVESTON

I concur in Justice Ellis' opinion regarding reversal of the summary judgment granted in favor of the city of Galveston.