

# THE ATTORNEY GENERAL
# OF TEXAS

**JIM MATTOX**
**ATTORNEY GENERAL**

July 30, 1990

Honorable Sam W. Dick
Criminal District Attorney
Fort Bend County
Fort Bend County Courthouse
Richmond, Texas 77469

Opinion No. JM-1197

Re: Authority of an appraisal district to purchase or lease real property, and related questions (RQ-1850)

Dear Mr. Dick:

Subchapter A of chapter 6 of the Tax Code governs the local administration of appraisal districts. You ask a series of six questions regarding specific provisions of subchapter A and the authority of an appraisal district to purchase or lease real property. We will address each of your questions in turn.

Your first question asks:

> Section 6.051(a), Texas Property Tax Code, provides that the board of directors of an appraisal district may purchase or lease real property for an appraisal office. Subsection (b) of Section 6.051 provides that in the 'acquisition' of real property by an appraisal district, three-fourths of the taxing units must approve the transaction.
>
> Pertaining to Section 6.051(b), does the word 'acquisition' apply only to the purchase of real estate and/or construction of improvements upon real estate or does it also include lease of real estate by the appraisal district, i.e., must the board of directors get three-fourths of the taxing units approval to lease an appraisal office?

We conclude that the three-fourths approval requirement of subsection (b) of section 6.051 of the Tax Code does not govern the lease of real property; it governs only the purchase of or construction of improvements to real property.

When the Property Tax Code was enacted in 1979 as title 1 of the Tax Code, subsection 6.05(a) provided merely that "[e]xcept as authorized by Subsection (b) of this section, each appraisal district shall establish an appraisal office." Subsection (b) authorized the board of directors of an appraisal district to enter into a contract, either with the board of directors of another appraisal district or with the governing body of a taxing unit in the district, "to perform the duties of the appraisal office for the district." No statutory provision, either in the code or elsewhere, explicitly authorized appraisal districts to purchase or lease real property or to construct or renovate any improvements thereon.

The legislature, after having been apprised of the fact that several appraisal districts had purchased buildings or entered into contracts for the construction or renovation of buildings without the specific statutory authority to do so, enacted section 6.051 of the code in 1987. Acts 1987, 70th Leg., ch. 55, § 2, at 147. The section not only confers such authority on appraisal districts, but also permits the ratification of an acquisition of real property by an appraisal district that occurred prior to the section's enactment. Bill Analysis, S.B. 312, 70th Leg. (1987).

Section 6.051 of the Tax Code governs the ownership or lease of real property by an appraisal district and provides:

> (a) The board of directors of an appraisal district <u>may purchase or lease real property and may construct improvements as necessary</u> to establish and operate the appraisal office or a branch appraisal office.

> (b) <u>The acquisition or conveyance of real property or the construction or renovation of a building or other improvement by an appraisal district must be approved by the governing bodies of three-fourths of the taxing units entitled to vote on the appointment of board members</u>. The board of directors by resolution may propose a property transaction or other action for which this subsection requires approval of the taxing units. The chief appraiser shall notify the presiding officer of each governing body entitled to vote on the approval of the proposal by delivering a copy of the board's resolution, together with information showing the costs of other

available alternatives to the proposal. On or before the 30th day after the date the presiding officer receives notice of the proposal, the governing body of a taxing unit by resolution may approve or disapprove the proposal. If a governing body fails to act on or before that 30th day or fails to file its resolution with the chief appraiser on or before the 10th day after that 30th day, the proposal is treated as if it were disapproved by the governing body.

(c) The board of directors may convey real property owned by the district, and the proceeds shall be credited to each taxing unit that participates in the district in proportion to the unit's allocation of the appraisal district budget in the year in which the transaction occurs. A conveyance must be approved as provided by Subsection (b) of this section, and any proceeds shall be apportioned by an amendment to the annual budget made as provided by Subsection (c) of Section 6.06 of this code.

(d) An acquisition of real property by an appraisal district before January 1, 1988, may be validated before March 1, 1988, in the manner provided by Subsection (b) of this section for the acquisition of real property. (Emphasis added.)

We understand you to ask whether the phrase "acquisition or conveyance of real property" comprises only the purchase of real property or whether the phrase includes a lease of real property as well. While we admit that the issue is a close one, we think that the phrase does not include a lease of real property. We conclude that if the legislature had intended that leases be included within the ambit of subsection (b), it would have employed the term "lease" explicitly or the phrase "possessory interest" or a phrase such as "acquisition or conveyance of an interest in real property."

On the one hand, the phrase "real property" has been defined for some purposes by the courts to include leases or leasehold estates. See, e.g., Iron County v. State Tax Comm'n, 437 S.W.2d 665 (Mo. 1968); State Savings & Loan Ass'n v. Bryant, 81 P.2d 116 (Or. 1938). On the other hand, the phrase also has been defined for some purposes not to include leases or leasehold estates. See, e.g., D. P. C.

Reconstruction Finance Corp. v. Assessor of Town of Johnsburg, 525 N.Y.S.2d 404 (N.Y. App. 1988); University of Hartford v. City of Hartford, 477 A.2d 1023 (Conn. App. 1984); see also Jack v. State, 694 S.W.2d 391 (Tex. App. - San Antonio 1985, writ ref'd n.r.e.) (lease is a grant or devise of realty, usually for a term of years).

In construing a statute, we may consider, inter alia, the legislative history of the provision. Gov't Code § 311.023. An examination of the legislative history of section 6.051 supports our construction that subsection (b) was intended by the legislature to govern the purchase or sale of real property or the construction or renovation of improvements thereon. The "Section by Section Analysis" set forth in the Bill Analysis prepared by the Subcommittee on Property Tax of the House Ways and Means Committee declares that section 2 of the bill, which contained section 6.051 of the code:

> Adds a new Section 6.051 to permit appraisal districts to buy, sell, and lease real property and construct improvements as needed to provide appraisal district offices. Each purchase, sale, construction project or renovation project must be approved by 3/4 of the taxing entities entitled to vote in elections of appraisal district directors.
> (Emphasis added.)

No mention is made in the underscored sentence to leases of real property. Additionally, tapes of committee hearings indicate that the focus of the legislature's concern was on the purchase or sale of buildings and land, not on the lease of office space:

> Senator Jones: A number of appraisal districts across the state have acquired property; there is no provision in the statutes authorizing that. S.B. 312 authorizes [appraisal districts] to buy property on the vote of 4/5 of the taxing entities who comprise the appraisal district. They can sell property on the same basis -- if they sell it -- then the proceeds are distributed to the taxing agencies on the same basis as they contributed for the years in which the property was sold. It clarifies the existing situation.

Hearings on S.B. 312 before the Senate Committee on Finance, 70th Leg. (Feb. 17, 1987) (tape available from Senate Staff Services).

Though a plausible argument certainly can be made in support of the proposition that subsection (b) of section 6.051 of the Tax Code embraces leases, we think that a better reading of the subsection restricts its scope to the purchase and sale of real property and the construction or renovation of improvements thereon. Therefore, we answer your first question in the negative; the board of directors of an appraisal district need not seek the approval of the governing bodies of three-fourths of the taxing units that comprise the appraisal district in order to enter into a lease for office space.

Your second question asks:

> In the event the answer to Inquiry No. 1 is in the affirmative that the leasing of real estate is included in the statutory intent of acquisition (and assuming that the appraisal district can not get three-fourths of the taxing units approval to lease office space), how can the appraisal district meet its statutory mandate to establish an appraisal office, as required by Section 6.05(a)?

Because we answered your first question in the negative, we need not address your second question.

Your third question asks:

> Is a county prohibited from giving or leasing office space to the appraisal district pursuant to Section 263.001, Texas Local Government Code, i.e. before the county could allow the appraisal district to use its property must the county follow the procedures set out in Section 263.001?

Chapter 263 of the Local Government Code governs the sale or lease of property by the county. Section 263.001 provides the following:

> (a) The commissioners court of a county, by an order entered in its minutes, may appoint a commissioner to sell or lease real property owned by the county. The sale or lease must be made at a public auction held

in accordance with this section unless this chapter provides otherwise.

(b) The appointed commissioner must publish notice of the auction before the 20th day before the date the auction is held. The notice must be published in English in a newspaper in the county in which the real property is located and in the county that owns the real property if not the same county. The notice must be published once a week for three consecutive weeks before the date the auction is held.

(c) If the real property is sold, a deed that is made on behalf of the county by the appointed commissioner in conformance with the order entered under Subsection (a) and that is properly acknowledged, proved, and recorded is sufficient to convey the county's interest in the property.

In Attorney General Opinion JM-335 (1985), we were asked whether a county must follow article 1577, V.T.C.S., the predecessor statute to section 263.001 of the Local Government Code, when it sells its county hospital. Specifically, we were asked whether the county had to comply with the provisions of article 1577 in an instance in which two different statutes, which were enacted subsequent to the passage of article 1577, authorized the contemplated sale and set forth procedures with which the county had to comply. We concluded that in such a situation, a county need not comply with article 1577:

The source of your concern is the statement in several Texas cases that a county must comply with article 1577 in order to sell real estate. See, e.g., Ferguson v. Halsell, 47 Tex. 421, 422 (1877); Hardin County v. Nona Mills Co., 112 S.W. 822 (Tex. Civ. App. 1908, no writ). Such statements must be read in their historical context. The legal basis for any action by a county must be found in the Texas Constitution or statutes. Canales v. Laughlin, 214 S.W.2d 451, 453 (Tex. 1948). A conveyance of land by a county is void if it is not done in a manner prescribed by statute. Wilson v. City of Calhoun, 489 S.W.2d 393, 397 (Tex. Civ. App. - Corpus Christi 1972, writ ref'd n.r.e.). Article 1577 states that counties

> may sell real estate in accordance with its provisions. Absent other authority for selling real estate, however, a county <u>must</u> sell real estate in accordance with article 1577 or not at all. 15 Tex. Jur. 2d <u>Counties</u> § 88. Clearly, when counties sell real estate by other means authorized by the constitution or statutes, compliance with article 1577 is not mandatory. <u>See</u> <u>Ferguson</u> <u>v. Halsell</u>, 47 Tex. at 422 (1877).

Attorney General Opinion JM-335 at 1-2.

Section 292.001 of the Local Government Code provides the following in pertinent part:

> (a) The commissioners court of a county may purchase, construct, or provide by other means, or may reconstruct, improve, or equip a building or rooms, other than the courthouse, for the housing of county or district offices, county or district courts, justice of the peace courts, county records or equipment (including voting machines), or county jail facilities, or for the conducting of other public business, if the commissioners court determines that the additional building or rooms are necessary. The commissioners court may purchase and improve the necessary site for the building or rooms.
>
> . . . .
>
> (c) <u>The commissioners court may lease or rent to any person any part of the building or rooms that are not necessary for the purposes described by Subsection (a).</u> (Emphasis added.)

We construe section 292.001 to constitute the "other means" by which a county is authorized to enter into a lease agreement with an appraisal district, thereby rendering compliance with section 263.001 of the Local Government Code unnecessary. Therefore, we answer your third question in the negative.

Your fourth question asks:

> Can the county lease office space to the appraisal district through an interlocal agreement, pursuant to Article 4413(32c),

V.T.C.S., Texas Interlocal Cooperation Act, disregarding Section 263.001?

We answer your question in the negative.

Subsection 4(a) of the Interlocal Cooperation Act provides:

> Any local government may contract or agree with one or more local governments to perform <u>governmental functions and services</u> under terms of this Act. (Emphasis added.)

Subsection 3(2) defines "governmental functions and services" in the following way:

> 'Governmental functions and services' means all or part of any function or service included within the following general areas: police protection and detention services; fire protection; streets, roads, and drainage; public health and welfare; parks; recreation; library services; museum services; records center services; waste disposal; planning; engineering; administrative functions; public funds investment; and such other governmental functions which are of mutual concern to the contracting parties.

Subsection 4(b) provides in pertinent part:

> The agreements or contracts may be for the purpose of studying the feasibility of contractual performance of any governmental functions or services or may be for the performance of any governmental functions or services <u>which all parties to the contact are legally authorized to perform</u>, provided such contracts or agreements shall be duly authorized by the governing body of each party to the contract or agreement. (Emphasis added.)

The act has been construed not to confer on any governmental entity the substantive authority to perform any governmental function or service, but rather it confers on a governmental entity the authority to perform a governmental function for another governmental entity that it already was authorized to perform. <u>See, e.g.</u>, Attorney General Opinions JM-891 (1988); H-392 (1974); H-28 (1973).

We need not determine whether the leasing of office space by one political subdivision to another in order that the other political subdivision may perform its governmental functions falls within the definition of "governmental functions or services." The Interlocal Cooperation Act does not authorize expressly a county to lease its excess office space to another political subdivision; however, section 292.001 of the Local Government Code does. Therefore, because of our answer to your third question, we conclude that a county may lease office space to an appraisal district pursuant to section 292.001 of the Local Government Code.

Your fifth question is in two parts and asks:

> 5. Section 6.05, Texas Property [Tax] Code provides that the board of directors can contract with taxing units to perform duties.
>
> (a) Can the board of directors contract for office space or is this provision limited to 'duties' only?
>
> (b) Is a contract entered into pursuant to subsection (b) of Section 6.05 also limited to the approval of three-fourths of the taxing units?

Section 6.05 of the Tax Code provides in pertinent part:

> (a) Except as authorized by subsection (b) of this section, each appraisal district shall establish an appraisal office. The appraisal office must be located in the county for which the district is established. An appraisal district may establish branch appraisal offices outside the county for which the district is established.
>
> (b) The board of directors of an appraisal district may contract with an appraisal office in another district or with a taxing unit in the district to perform the duties of the appraisal office for the district. (Emphasis added.)

In the context of political subdivisions, the word "duties" refers to those responsibilities imposed by the constitution and laws of this state. See, e.g., City of Galveston v. Galveston County, 159 S.W.2d 976 (Tex. Civ.

App. - Galveston 1942, writ ref'd); Welch v. State, 148 S.W.2d 876 (Tex. Civ. App. - Dallas 1941, writ ref'd). The "duties of the appraisal office" are those responsibilities set forth in the Tax Code; nowhere do we find the leasing of office space to be such a duty. We have found no authority to support the contention that the phrase "to perform the duties of the appraisal office" includes any duty to lease office space. Subsection (a) of section 6.051 of the Tax Code sets forth the authority of an appraisal district board of directors to lease office space; section 6.05 confers no such authority. Therefore, we answer the first part of your fifth question in the negative; section 6.05 of the Tax Code does not authorize an appraisal district to lease office space.

The second part of your fifth question is answered by an examination of the plain words of section 6.05 itself. No mention is made in section 6.05 of making the exercise of any power conferred by that section contingent upon the approval of any of the governing bodies of any of the taxing units comprising the appraisal district. Therefore, we answer the second part of your fifth question in the negative; a contract entered into pursuant to subsection (b) of section 6.05 does not require the approval of any of the governing bodies of the taxing units comprising the appraisal district.

Your last question asks:

> In the event the county could lease office space to the appraisal district under Section 263.001 or Article 4413(32c), would Section 6.051 require three-fourths approval (assuming your answer to question 1 supra. is in the affirmative), of the various taxing units?

Because of our answer to your first question, we answer your last question in the negative. We conclude that the three-fourths approval requirement set forth in subsection (b) of section 6.051 of the Tax Code does not govern leases of real property.

## S U M M A R Y

> The three-fourths approval requirement of subsection (b) of section 6.051 of the Tax Code does not govern leases of real property; it governs the purchase or sale of real property and the construction or renovation of improvements thereon. Section 291.001 of

the Local Government Code authorizes a county to lease its excess office space to an appraisal district; therefore, section 263.001 of the Local Government Code is inapplicable in the situation that you describe. Section 6.05 of the Tax Code permits the board of directors of an appraisal district to contract with another appraisal district or another taxing unit in its county to perform appraisal functions, as defined in the Tax Code; it does not confer authority on an appraisal district to lease office space from another taxing unit. Contracts properly entered into by the board of directors of an appraisal district pursuant to section 6.05 of the Tax Code need not be approved by the governing bodies of three-fourths of the taxing units that comprise the appraisal district.

Very truly yours

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General