Pablo **VELA, Jr.** and Wife, Hortencia **Vela, Individually and on Behalf of the Estate of Edward Vela, Deceased, Appellants,**

v.

**CAMERON COUNTY, Texas and the State of Texas, Appellees.**

No. 13–85–001–CV.

Court of Appeals of Texas, Corpus Christi.

Nov. 27, 1985.

Rehearing Denied Dec. 19, 1985.

William L. Morrow, Carinhas & Morrow, Brownsville, for appellants.

David H. Hockema, Atlas & Hall, Edna Ramon, Asst. Atty. Gen., Austin, for appellees.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

DORSEY, Justice.

This is an appeal from a summary judgment granted in favor of Cameron County and the State of Texas. Hortencia and Pablo Vela brought suit under the Wrongful Death and Survival Acts alleging that the State and County were negligent, and

that the negligence resulted in the drowning of their son, Edward, in the waters of the Gulf of Mexico, offshore a park owned and operated by Cameron County. The particular allegations of negligence were two: 1) failing to post signs at Andy Bowie Park warning park users of the dangerous undertows in the water; and 2) failing to provide lifeguards and emergency medical services in the park area.

Edward Vela was drowned in the Gulf of Mexico on April 26, 1981, while he and his family were picnicking in Andy Bowie Park, a park controlled by Cameron County on South Padre Island adjoining the Gulf of Mexico. The drowning occurred seaward of the mean low tide line of the park's beach. Cameron County did not have lifeguards or emergency medical services at Andy Bowie Park, although both were provided by the County at Isla Blanca Park, another beach front park operated by the County two or three miles distant on the gulf coast.

The plaintiffs alleged that the waters of the Gulf of Mexico off Andy Bowie Park were unsafe and dangerous because of the undertow of the water. The parties stipulated that there are no signs warning the public of the undertow.

In their first argument, appellants claim that the trial court erred in granting the summary judgment for the County because the evidence did not establish as a matter of law that Cameron County owed no duty to Vela. Appellants maintain that Cameron County had a duty to warn of hazards under a theory of premise liability.

In order to predicate a duty on that theory, it is necessary to determine whether the County owned, occupied or controlled the premises where the drowning occurred. *Marshbank v. Austin Bridge Co.*, 669 S.W.2d 129, 133 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.) The parties entered into a stipulation agreeing that the drowning occurred in Gulf waters that were seaward of and beyond the line of mean low tide.

It is undisputed that Andy Bowie Park is a County park of Cameron County and that the County controlled the beach area. TEX.NAT.RES.CODE ANN. § 61.-001(5) (Vernon 1978) defines a public beach as:

any beach area, whether publicly or privately owned, extending inland from the line of mean low tide to the line of vegetation bordering on the Gulf of Mexico to which the public has acquired the right of use or easement to or over the area by prescription, dedication, presumption, or has retained a right by virtue of continuous right in the public since time immemorial, as recognized in law and custom.

Title to land covered by waters of bays, inlets and arms of the Gulf of Mexico is in the State of Texas and is considered public property in trust by the State for the use and benefit of the people. *Lorino v. Crawford Packing Co.*, 175 S.W.2d 410 (Tex. 1943); *Cameron County v. Velasquez*, 668 S.W.2d 776, 780 (Tex.App.—Corpus Christi 1984, writ ref'd. n.r.e.). By stipulation the parties agreed that the accident took place seaward of and beyond the line of mean low tide, and not on the "beach" as that term is defined by the Code. This Court held in *Cameron County v. Velasquez*, 668 S.W.2d 776 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.) that the duty of the County extends only over that area that it controls, which is between the vegetation line and that of mean low tide. *Velasquez* at 781. Before a duty may be imposed, it is generally necessary that the injury occur *on the premises owned or occupied by the defendant. Id.; See Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex.1983); *Rosas v. Buddies Food Store*, 518 S.W.2d 534 (Tex.1975). Because neither the accident in question occurred on "premises" owned, occupied or controlled by the County, nor was the hazard located on its premises, the County owed no legal duty to warn Vela of the dangers off its premises.

As an exception to that rule, appellants cite *Parking, Inc. v. Dalrymple*, 375 S.W.2d 758 (Tex.Civ.App.—San Antonio 1964, no writ), and *Chapman v. Parking, Inc.*, 329 S.W.2d 439 (Tex.Civ.App.—San

Antonio 1959, writ ref'd n.r.e.), which hold that a landowner has a duty to warn of hazards on adjoining premises. Both of these cases involve hazardous conditions on adjoining parking lots. Both involved the duty of a landowner to its business invitees. Here, as no payment was made for the use of the County park, the applicable standard of care is that owed to licensees, as mandated by Section 18(b) of the Texas Tort Claims Act. We therefore hold that *Dalrymple* and *Chapman* are inapplicable to the instant case.[1]

In their second argument, the Velas contend that the trial court erred in granting the summary judgment because the County failed to provide lifeguards as it was required to do under TEX.NAT.RES.CODE ANN. § 61.066 (Vernon 1978)[2] and § 61.-063 (Vernon 1978).[3] The County stipulated that they did not employ lifeguards or have emergency medical services at Andy Bowie Park on the day of the drowning. There was summary judgment evidence that lifeguards were being used the day of the accident at nearby Isla Blanca Park, another park operated by the County. Appellants claim that the clear language of the Code mandates that Cameron County has the responsibility for the supervision of safety conditions at the park and explicitly instructs the County to employ lifeguards at its parks.

■ ■ The County is a political subdivision of the State and is immune from actions arising out of its negligence or the negli-

gence of its agents, officials and employees unless this immunity is waived by the Texas Tort Claims Act. The distinction between proprietary and governmental functions does not apply to counties. *Turvey v. City of Houston*, 602 S.W.2d 517 (Tex.1980). A county does not perform any proprietary functions. *Id.* at 519.

Assuming a duty by the County under the Natural Resources Code, the issue thus presented is whether immunity has been waived under the Tort Claims Act.

■ Appellants seek to hold the County liable under the provisions of Section 3(b) or Section 18 of the Tort Claims Act. Art. 6252–19 § 3(b) holds a governmental unit liable for "some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state." Section 18(b) provides that, as to premises defects, the government owes a claimant only that duty owed by private persons to licensees on private property. We have already determined that the waiver provision under § 18 is not applicable here because the incident did not occur on County premises.

■ There remains a question whether § 3 is applicable to this case. In order to find that the waiver provision under § 3 applies, we must agree that the failure to assign lifeguards and/or provide lifesaving measures at the park constituted a negli-

---

1. TEX.REV.CIV.STAT.ANN. art. 6252–19 § 18(b) (Vernon 1970) reads:
    As to premises defects, the unit of government shall owe to any claimant only the duty owed by private persons to a licensee on private property, unless payment has been made by the claimant for use of the premises. Provided, however, that the limitation of duty contained in this subsection shall not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads or streets, nor shall it apply to any such duty to warn of the absence, condition or malfunction of traffic signs, signals or warning devices as is required in Section 14(12) hereof.

2. TEX.NAT.RES.CODE ANN. § 61.066 (Vernon 1978) reads:

    It is the duty and responsibility of the commissioners court of any county located or bordering on the Gulf of Mexico to *clean and maintain* the condition of all public beaches located inside the county but outside the boundaries of any incorporated city located or bordering on the Gulf of Mexico and all public beaches owned by the county and located inside the boundaries of an incorporated city, town, or village. (emphasis ours).

3. Section 61.063 provides in part: "'clean and maintain' means the collection and removal of litter and debris and the supervision and elimination of sanitary and safety conditions that would pose a threat to personal health or safety if not removed or otherwise corrected *and includes the employment of lifeguards,* beach patrols, and litter patrols." (emphasis ours).

gent condition or use of tangible property, real or personal. In other words, appellants ask us to extend the waiver provisions in § 3 to include a "non use" of property and a failure to assign personnel. In *Salcedo v. El Paso Hospital Dist.*, 659 S.W.2d 30, 33 (Tex.1983) the Texas Supreme Court stated, in part:

> The negligent conduct, however, must involve 'some condition or some use' of tangible property under circumstances where there would be private liability.

"Use" was defined by the Court as "to put or bring into action or service; to employ for or apply to a given purpose." *Id.* at 33. We hold that the failure to assign lifeguards to Andy Bowie Park does not come within the waiver provisions of § 3, and, accordingly, we find liability of the County is foreclosed by the Texas Tort Claims Act on that theory.

■ The remaining question is whether the County had a duty to provide life saving equipment. No statutory duty is imposed upon the County to provide such equipment; therefore, if indeed a duty exists, it exists in the common law. We can find no such duty. In addition, we do not find a waiver of immunity under § 3(b), because the appellant does not allege a condition or use of tangible property, but rather, a "non-use".

Appellants' first and second points of error are overruled.

Appellants' third point of error is directed to the summary judgment granted the State that is based upon the State's lack of notice of the claim or lack of actual notice of the injury.

The summary judgment evidence favorable to the appellants are letters that were sent by a cousin of the deceased to two State senators and a State representative shortly after the tragedy. The content of each is identical:

> A twenty-year old man drowned at South Padre Island's public beach on April 26, 1981, because there are no lifesaving facilities available to the people, primarily poor Mexicans, who frequent this public beach. However, there are such facilities located in the "business areas" of the beach. This man was the fifth known victim to drown at South Padre Island's public beach since April, 1980, and the officials of Cameron County have done nothing to prevent future drownings.
>
> I am enclosing an article which I have sent to the newspapers in the Rio Grande Valley of Texas concerning the incident.
>
> It is my hope this tragedy will merit your serious consideration. We must discover why there are no life-saving facilities at South Padre Island's public beach and correct the situation.

The appellants claim that the trial court erred because appellants established by summary judgment proof (1) that the State was provided notice that complied with the notice provisions of TEX.REV.CIV.STAT. ANN. art. 6252–19 (Vernon 1970 and Vernon Supp.1985) (Texas Tort Claims Act); (2) that the State had actual notice of the incident; and, (3) that, at the very least, a fact issued was raised regarding actual notice.

These letters did not complain of any fault on the State's part. Instead, they complained of the failure of Cameron County to provide "lifesaving facilities" for beachgoers. Appellants do not contend that either actual or formal notice was supposed to have been received in any other way.

TEX.REV.CIV.STAT.ANN. art. 6252–19 § 16 (Vernon Supp.1985), provides as follows:

> Except where there is actual notice on the part of the governmental unit that death has occurred or that the claimant has received some injury or that property of the claimant has been damaged, any person making a claim hereunder shall give notice of the same to the governmental unit against which such claim is made, reasonably describing the damage or injury claimed and the time, manner and place of the incident from which it arose, within six months from the date of the incident. Provided, however, except where there is such actual notice, charter

and ordinance provisions of cities requiring notice within a charter period permitted by law are hereby expressly ratified and approved.

■ The Act provides that notice of a claim [4] shall be given to the governmental unit against which the claim is being made, unless the governmental unit has actual notice of the incident. Act, § 16. Clearly, no notice *of a claim* was given by any of the letters to the legislators. The formal notice portion of § 16 was not satisfied. It must then be determined if actual notice of an incident giving rise to a claim was received by the State of Texas.

■ Under § 16, it is the "governmental unit" which must have actual notice. "Unit of government" is defined in § 2(1) of the Act to include "the State of Texas and all of the several agencies of government which collectively constitute the government of the State of Texas...." Where the State is to be a defendant in an action brought under the Act, it is unclear from reading § 2(1) whether actual notice must be given to the State in general or to one or more of its agencies. We are unable to cite one case in which the State was held to have actual notice under § 16 based on notice to a member of the State legislature. While cases exist in which a city was deemed to have actual notice of an incident, due to the knowledge by an agent of the city, those cases were founded on the theory of an agent's duty to report the incident to his principal. *See, e.g., City of Galveston v. Shu,* 607 S.W.2d 942, 945 (Tex.Civ. App.—Houston [1st Dist.] 1980, no writ) (police officer investigated and filed report of traffic accident); *Collier v. City of Texas City,* 598 S.W.2d 356, 358 (Tex.Civ.App. —Houston [14th Dist.] 1980, no writ) (knowledge by Director of Public Works of injury at landfill site); *City of Fort Worth v. Davidson,* 296 S.W. 288, 289 (Tex.Comm. App.1927, opinion adopted).

This reasoning does not apply where the State of Texas is defendant. First, the State is much more vast and compartmentalized than are its cities. Second, there is no agency-type duty to report the incident to a superior. The structures of city governments are different from the governing scheme of our state. State senators and representatives, the alleged recipients of the letters in question, are under the legislative branch of our state government. TEX.CONST. art. III, § 1. The governmental units charged with handling claims against the State are under the executive department. The Secretary of State compiles all notices of claims and other official papers. TEX.REV.CIV.STAT.ANN. art. 4331(5) (Vernon Supp.1985). This includes receiving service of citation in suits under the Act. Act, § 8. The Attorney General represents the interests of the State of Texas in any action against the State. TEX.REV.CIV.STAT.ANN. art. 4395 (Vernon 1976). This includes defending actions against the State under the Act. Act, § 9. Both the Secretary of State and the Attorney General are in the executive department. TEX. CONST. art. IV, § 1. Not only is there no duty of a legislator to report such matters to the Secretary of State or Attorney General, but those in the legislative department are fundamentally separated from each other by the mandate of TEX. CONST. art. II, § 1. The same would be true with the judicial branch of our government.

Would the fact that a legislator witnessed the drowning at Andy Bowie Park be construed as actual notice to the State under § 16, absent evidence that the legislator communicated it to someone in the executive branch who could make an investigation? We think not.

It is clear from this analysis that suits against the State under the Act are handled entirely by the executive department. The legislative department has nothing to

---

**4.** The Act actually reads "notice of the same...." It is uncertain from reading § 16 whether "same" refers to a claim or to an injury or death. However, strong support for construing "same" as referring to a claim is found in the full title of the Act. It reads in part "an Act to be known and cited as the Texas Tort Claims Act ... requiring claimants to give notice *of their claim* except where there is actual notice ..." (emphasis added). Texas Tort Claims Act, ch. 292, 1969 TEX.GEN.LAWS 874.

do with handling torts allegedly committed by officers or agents of the State. Any suggestion that one of the legislators might have communicated this incident to the executive department would be mere conjecture. There was no summary judgment evidence that this type of notice took place. Where summary judgment evidence only raises a mere surmise or suspicion of a fact in issue, there is no genuine issue of material fact sufficient to defeat a motion for summary judgment. *Snyder v. Jones*, 392 S.W.2d 504, 509 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.).

To hold that a complaint to a legislator could, in law, be actual notice as to satisfy § 16 is to undermine the agent/principal reasoning of prior cases in this area. The "notice" in this case is not the type of "actual notice" contemplated by § 16, as a matter of law. We recognize the rule that the existence of actual notice is a fact issue. *Alvarado v. City of Lubbock*, 685 S.W.2d 646 (Tex.1985); *Lorig v. City of Mission*, 629 S.W.2d 699 (Tex.1982). We hold that the evidence relied on by appellants is insufficient to raise the question of the existence of actual notice. The trial court's action in granting summary judgment favorable to the State of Texas is affirmed.

The judgment of the trial court is AFFIRMED.