**TEXAS PARKS AND WILDLIFE DEPARTMENT, Appellant,**

v.

Lila WILSON, as Surviving Wife of Wilford Wilson and Janet Denise Wilson Belz, Debra Kay Wilson, Mary Ann Wilson Yancy and Tamara Lee Wilson, as Surviving Children of Wilford Wilson, Deceased; and Lydia Mae Wilson, Individually, and as Independent Executrix of the Estate of Wilton Guendell Wilson, Deceased, and Angela Gayle Wilson Kramm and Curtis Dale Wilson, Surviving Children of Wilton Guendell Wilson, Deceased, Appellees.

No. 03–97–00520–CV

Court of Appeals of Texas, Austin.

Jan. 28, 1999.

Rehearing Overruled March 25, 1999.

John Cornyn, Attorney General, S. Ronald Keister, Assistant Attorney General, Austin, for Appellant.

Jay L. Winckler, Winckler & Harvey, L.L.P., Austin, for Lila Wilson.

Will S. Moursund, Moursund, Moursund, Moursund & Moursund, Round Mountain, Jim Dear, Law Offices of Jim Dear, P.C., Dripping Springs, for Lydia Mae Wilson, et al.

Before Chief Justice ABOUSSIE, Justices JONES and YEAKEL.

LEE YEAKEL, Justice.

This is a wrongful death and survival case brought against appellant Texas Parks and Wildlife Department (the Department) pursuant to the Texas Torts Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 71.001–.011 (wrongful death statute), .021 (survival statute), 101.001–.109 (Texas Tort Claims Act) (West 1997 & Supp.1998).[1] A jury found the Department liable for the deaths of two brothers, Wilton and Wilford Guendell Wilson, and the trial court rendered judgment in favor of appellees, who are survivors and representatives of the Wilson brothers. We will reverse the trial court's judgment and render in part and remand in part for new trial.

## FACTS AND PROCEDURAL BACKGROUND[2]

The Department owns and operates Pedernales Falls State Park (the Park). On May 16, 1987, the Wilson brothers, along with Wilford's adult son, Thomas Wayne Wilson (Wayne), decided to fish in the Pedernales River. They drove to the Park around 3:00 p.m., parked their vehicle at the end of a paved road close to the river, walked the edge of the river along Park property, and entered the water by wading and walking across rocks protruding from the river. When they reached an area known as "Hugo Hole," approximately two-thirds of the way across the river, they set a minnow bucket on a rock and began to fish.

Around 8:15 p.m., Wes Carlson and his son arrived at the Park to join the Wilsons. Approximately fifteen minutes after the Carlsons began fishing with the Wilsons, Wayne spotted the minnow bucket

---

1. The 1987 and 1995 amendments to the Texas Tort Claims Act do not apply in this case. Therefore, we will refer to the current statute in this opinion for purposes of convenience.

2. A more detailed summary of the facts can be found in previous opinions in this case. *See Wilson v. Texas Parks and Wildlife Dep't,* 853 S.W.2d 825, 827–28 (Tex.App.—Austin 1993), *rev'd,* 886 S.W.2d 259 (Tex.1994).

floating away due to a sudden rise in the river level. Realizing that a flash flood was occurring, the Wilsons and Carlsons immediately headed toward the bank on the Park side of the river. The Wilson brothers drowned before they could reach the riverbank. Wayne and the Carlsons survived.

Appellees instituted a wrongful death and survival action[3] against the Department based on a premises liability theory.[4] The jury found that the Wilson brothers were on Department property at the time of accident, that the Wilson brothers were invitees, and that the Department, as owner and occupier of the premises, failed to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which the Department was aware or should have been aware. The jury awarded appellees damages exceeding the statutory limits under the Texas Tort Claims Act. The trial court rendered judgment for appellees in the maximum amount allowed under the Texas Tort Claims Act, $250,000 to Wilford's representatives and survivors and $250,000 to Wilton's representatives and survivors. *See* Texas Tort Claims Act § 101.023(a). The Department now appeals the trial court's judgment in nineteen points of error.

## DISCUSSION

### Establishing liability under the Texas Tort Claims Act

▮ Under common law, the State of Texas, its agencies, and other governmental units[5] are immune from suit. *See Lowe v. Texas Tech Univ.,* 540 S.W.2d 297, 298 (Tex.1976). This governmental immunity is waived only if liability can be established under the limited circumstances specified pursuant to the Texas Tort Claims Act. *See* Texas Tort Claims Act § 101.025; *City of Denton v. Van Page,* 701 S.W.2d 831, 834 (Tex.1986). Section 101.021 provides that a governmental unit may be liable for personal injury or death "caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Texas Tort Claims Act § 101.021(2). As with any tort claim against a private person under Texas law, a plaintiff relying on the Texas Tort Claims Act "must prove the *existence* and violation of a *legal duty* owed him by the defendant." *Van Page,* 701 S.W.2d at 834 (emphasis added). Thus, the threshold issue that we must address is what legal duty, if any, the Department owed the Wilson brothers with respect to the dangerous condition of the Pedernales River. *See id.*

### The Department's legal duty

Question one of the jury charge inquired, "At the time of the occurrence in question, on May 16, 1987, were Wilford Wilson and Wilton Guendell Wilson on Texas Parks and Wildlife property?" The jury answered "yes," concluding that the Department owned the portion of the river

---

**3.** This case has been pending before several trial and appellate courts for many years. Appellees first sued the Department in Travis County, but the Department obtained a change of venue to Blanco County. The case was tried before a jury and, based on the jury's verdict, the trial court rendered a take-nothing judgment in favor of the Department. This Court affirmed and the Texas Supreme Court reversed and remanded on the ground that the change of venue was improper, and ordered a new trial in Travis County. *See Wilson v. Texas Parks and Wildlife Dep't,* 886 S.W.2d at 262.

**4.** In the proceedings incident to the second trial, appellees sued on several theories in addition to premises liability. The trial court granted the Department partial summary judgment on appellees' additional theories. Appellees do not challenge the trial court's partial summary judgment in this appeal.

**5.** The Department is a "governmental unit" as defined under the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.001(2)(A) (Texas Tort Claims Act) (West Supp.1998).

where the incident occurred. The Department's first two points of error challenge the sufficiency of evidence supporting the jury's finding that the Department owned the river. In point of error one, the Department asserts that there is no evidence that it owned the river. In its second point of error, the Department argues in the alternative that there is insufficient evidence supporting the jury's finding that it owned the river.

In reviewing a "no evidence" point attacking the legal sufficiency of the evidence supporting the jury's finding on an issue on which the appellant did not have the burden of proof, we consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *See Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992); *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 459 (Tex.1992). We will uphold the finding if more than a scintilla of evidence supports it. *See Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). When the evidence furnishes a rational basis for reasonable minds to reach different conclusions as to the existence of a vital fact, such evidence amounts to more than a scintilla. *See Havner*, 825 S.W.2d at 459.

A factual sufficiency challenge must demonstrate that there is insufficient evidence to support the jury's finding. *See Hickey v. Couchman*, 797 S.W.2d 103, 109 (Tex.App.—Corpus Christi 1990, writ denied). In reviewing a sufficiency of the evidence challenge, we consider all evidence supporting the jury's finding, setting aside the verdict only if the evidence by itself is so weak as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

▮▮▮▮ "In order to predicate a duty on a theory of premises liability, it is necessary to determine whether the governmen-

tal unit is a 'possessor' by virtue of ownership, occupation, or control of the premises or creation of the defect which allegedly caused the injury." *Payne v. City of Galveston*, 772 S.W.2d 473, 477 (Tex.App.—Houston [14th Dist.] 1989, writ denied) (citing *Van Page*, 701 S.W.2d at 834–35; *Vela v. Cameron County*, 703 S.W.2d 721, 723 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *Marshbank v. Austin Bridge Co.*, 669 S.W.2d 129, 133 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.)). It is undisputed under the evidence in this case that the Wilson brothers drowned in the Pedernales River adjoining Park property and that the river itself created the dangerous condition. It is also undisputed that the Department maintains and controls the Park. We find no evidence in the record, however, that the Wilson brothers drowned on premises owned by the Department.

All water flowing from every river in the state is the property of the State of Texas held in trust for the public. *See* Tex. Water Code Ann. § 11.021(a) (West 1988); *Carrithers v. Terramar Beach Community*, 645 S.W.2d 772, 774 (Tex.1983), *cert. denied*, 464 U.S. 981, 104 S.Ct. 422, 78 L.Ed.2d 357 (1983). The 1970 deed which granted the land for the Park specifically conveyed the land to the State of Texas, for the use and benefit of the Department, and expressly described the property line as running along the south side of the river. The deed did not describe or convey any portion of the river. Further, a plat showing a 1988 survey of the north portion of the Park's western property line specifically places the Park's northwestern boundary short of the river's shoreline.[6]

At trial, appellees presented evidence of a sign posted on Park property stating "PRIVATE PROPERTY BEGINS AT OPPOSITE WATERS EDGE" to establish the Department's ownership of the

---

**6.** We also note that in the reply brief of appellees Lydia Wilson, et al., they state, "It is undisputed that Pedernales riverbed belongs to the State of Texas and not to the Texas Parks and Wildlife Department."

river. The sign merely informs Park patrons that the Department does not own the land on the *other side* of the river. Such plain language cannot be interpreted to mean the Department owns the river, for the legislature has designated that all of the Pedernales River is held in trust for the public, not just the Department.[7] Thus, the Department's control and maintenance of the *Park* and the fact that the Park adjoins the Pedernales River does not create a "premises" defect because the river is not owned by the Department. *See City of San Benito v. Cantu,* 831 S.W.2d 416, 425 (Tex.App.—Corpus Christi 1992, no writ); *Vela,* 703 S.W.2d at 723. We sustain the Department's first point of error.

■ Appellees argue that the legal sufficiency of the evidence supporting the jury finding on ownership is irrelevant because the evidence supports a finding that the Department "controlled" the portion of the river adjoining the Park, regardless of whether it owned that portion of the river. "In order to predicate a duty on a theory of premises liability, it is necessary to determine whether the governmental unit is a 'possessor' by virtue of ownership, occupation *or* control of the premises or creation of the defect which allegedly caused the injury." *Payne,* 772 S.W.2d at 477

(emphasis added) (citing *Van Page,* 701 S.W.2d at 834–35; *Vela,* 703 S.W.2d at 723; *Marshbank,* 669 S.W.2d at 133). Texas courts recognize that ownership is not synonymous with control. *See De Leon v. Creely,* 972 S.W.2d 808, 812 (Tex.App.—Corpus Christi 1998, no pet.); *IDC, Inc. v. County of Nueces,* 814 S.W.2d 91, 94 (Tex. App.—Corpus Christi 1991, writ denied). Thus, the issue of control is a separate question of fact for the jury to determine. *See Payne,* 772 S.W.2d at 485.

Appellees argue in their reply points that "there is substantial evidence that the Appellant exercised control over the premises in question, that is, the riverbed." Only the issue of ownership was before the jury; the question of control was not presented to the jury. Our review of the record reveals, however, that appellees did object to question one of the jury charge and did submit a substantially correct question addressing the issue of control, which the trial court denied.[8] *See Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex.1994); Tex.R. Civ. P. 274. Thus, the jury was never allowed to reach the issue of control. In the interest of justice, therefore, we conclude that the cause should be remanded for a new trial solely on the issue of control. See Tex. R.App. P. 43.3(b).[9]

7. We note that the legislature identifies the Department as a separate governmental unit of the State of Texas charged with specific duties and functions specified by statute. *See* Tex. Parks & Wildlife Code Ann. §§ 11.001–.074 (West 1991 & Supp.1998). Pursuant to the Texas Tort Claims Act, a claimant must specifically name the governmental unit against whom liability is to be established. Texas Tort Claims Act § 101.102(b). The Department was the only defendant in this case. Accordingly, appellees must establish liability against the Department, not the State. Ownership of the river, therefore, cannot be imputed to the Department.

8. Appellees submitted the following question, which was refused by the trial court: "On May 16, 1987, were Wilford Wilson and Wilton Guendell Wilson on property owned or controlled by the Texas Parks and Wildlife Department?"

9. The Department's appeal was perfected before the 1997 amendments to the Texas Rules of Appellate Procedure took effect. Under the former rules, when the trial court's judgment was to be reversed we were instructed to "proceed to render such judgment or decree as the court below should have rendered, except when it is necessary to remand to the court below for further proceedings." Tex.R.App. P. 81(c) (amended 1997). The Texas Supreme Court held that one instance when remand is necessary is when it is "in the interest of justice." *Scott v. Liebman,* 404 S.W.2d 288, 294 (Tex.1966). The current version of the Texas Rules of Appellate Procedure has codified the supreme court's holding, expressly granting this Court the authority to remand when "the interests of justice require a remand for another trial." Tex. R.App. P. 43.3(b). Applying either rule, we may remand this case to the trial court for a new trial.

## CONCLUSION

Having concluded that there is no evidence to support the jury's finding that the Department owned the portion of the Pedernales River adjoining the Park, we reverse the judgment of the trial court and render that appellees take nothing on that basis. In the interest of justice, however, we remand the cause to the trial court for new trial on the issue of control.