NUMBER 13-01-101-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


THE COUNTY OF HIDALGO , Appellant,


v.


AMALIA CAPETILLO, ET AL., Appellees.

___________________________________________________________________


On appeal from the 332nd District Court

of Hidalgo County, Texas.

__________________________________________________________________


O P I N I O N

Before Chief Justice Valdez and Justices Dorsey and Rodriguez

Opinion by Justice Rodriguez


This is an interlocutory, accelerated appeal from a trial court's denial of a plea to the jurisdiction based on sovereign
immunity. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (Vernon Supp. 2001). We affirm.

A group of plaintiffs (1) sued the County of Hidalgo (the County), Jose Cano and Mary Cano, both individually and as next
friends of Ana Cano, Central Power & Light Company, and Magic Valley Electric Cooperative for damages arising from a
motor-vehicle accident that occurred in Hidalgo County. Dominga Vasquez, individually and as next of friend of Lisa
Vasquez (intervenors), intervened in the suit. (2) The County filed a plea to the jurisdiction, and an amended plea to the
jurisdiction, alleging the trial court lacked subject matter jurisdiction because there was no allegation that it waived
sovereign immunity from suit under the Texas Tort Claims Act. The plaintiffs and intervenors filed responses to the plea. 
After a hearing, the trial court denied the County's plea to the jurisdiction. The County challenges this denial by a single
issue.

 According to the plaintiffs' petition, Ana Cano was driving north on Mile 6½ West Road in Hidalgo County at
approximately 11:45 p.m., when she collided with a vehicle traveling west on Mile 6 North Road driven by Orlando Perez. 
The collision caused Perez's vehicle to strike a utility pole. Three people died and others suffered personal injuries as a
result of the accident. At the time of the accident, the Mile 6 ½ West Road/ Mile 6 North Road intersection had stop signs
on Mile 6½ West directing those traveling north or south to stop. 

In their fifth amended petition, the plaintiffs alleged the County was negligent for failing to maintain proper lighting at the
intersection, failing to warn the public by use of road signs or other means that the intersection was dangerous, failing to
maintain proper "signage," failing to install "signage" and traffic control devices, failing to respond to public complaints
regarding the need for "signage" and traffic control devices, failing to comply with the Manual on Uniform Traffic Control
Devices, and failing to establish and enforce adequate standards for the placement and design of utility poles placed on a
public right of way, easement or county road. 

Similarly, the intervenors filed a petition in which they alleged the County was negligent for failing to regulate traffic
adequately at the intersection, failing to maintain traffic control devices at the intersection, failing to provide sufficient
lighting at the intersection, failing to inspect for dangerous conditions at the intersection, and failing to warn the public of
the danger created by inadequate regulation of traffic at the intersection. The intervenors also alleged that the poor
"signage" and lighting at the intersection was a special defect for which the County owed a duty to warn and to make
reasonably safe. Finally, the intervenors alleged the County failed to respond to complaints about the intersection, failed to
respond to requests for additional traffic control/safety devices, failed to comply with the Manual on Uniform Traffic
Control Devices, and failed to establish or enforce standards for the proper placement and design of utility poles. 

The County filed a plea to the jurisdiction, and an amended plea to the jurisdiction, to which it attached several exhibits. 
The exhibits included an affidavit of Joe Vasques, Director of right-of-ways for the County of Hidalgo, and excerpts from
the depositions of Sergeant Felipe Escobedo, Corporal Cris Vidales, Juan Rodriguez, Jr., Osiel Perez Cantu, Amalia
Capetillo, Ana Cano, Maria Del Refugio Cano, and Dominga Vasquez. 

The plaintiffs filed a response to the plea, and attached the deposition of Jason Ray Closner. The intervenors also filed a
response (3) which referred the trial court to various depositions filed of record, including, among others, the depositions of
Oscar Garcia, Martin Morales, and Jayson Ray Closner. 

The trial court verbally denied the plea at the conclusion of the hearing, and subsequently entered a written order denying
the same. The court did not specify the reason for its ruling in either its verbal or written ruling. 

In its sole issue, the County urges that the trial court erred in denying its plea to the jurisdiction because the plaintiffs,
intervenors, and Cano defendants (4) failed to allege facts in their pleadings that would establish waiver of the County's
sovereign immunity. Furthermore, the County maintains that the only allegation that could arguably establish a waiver of
immunity was fraudulently pleaded to confer jurisdiction on the trial court. 

 A plea to the jurisdiction is a dilatory plea, which is employed to challenge the trial court's subject matter jurisdiction over
a cause of action. Bland Independent School Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000); City of El Campo v. Rubio,
980 S.W.2d 943, 945 (Tex. App.--Corpus Christi 1998, pet. dism'd w.o.j.). Recently, the Texas Supreme Court announced:

A court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and
must do so when necessary to resolve the jurisdictional issues raised. The court should, of course, confine itself to the
evidence relevant to the jurisdictional issue. 

Blue, 34 S.W.3d at 555. Dismissing a cause of action based on a plea to the jurisdiction is proper only when incurable
jurisdictional defects are shown on the face of plaintiff's pleadings. El Paso Community Partners v. B & G/Sunrise Joint
Venture, 24 S.W.3d 620, 623 (Tex. App.--Austin 2000, no pet.); Flowers v. Lavaca County Appraisal Dist., 766 S.W.2d
825, 827 (Tex. App.--Corpus Christi 1989, writ denied). When the trial court has jurisdiction over any claim against a
governmental entity, the court should deny that entity's plea to the jurisdiction. See Harris County Flood Control Dist. v.
PG & E Texas Pipeline, L.P., 35 S.W.3d 772, 773 (Tex. App.--Houston [1st Dist.] 2000, pet. filed); Aledo Independent
School Dist. v. Choctaw Properties, L.L.C., 17 S.W.3d 260, 262 (Tex. App.--Waco 2000, no pet.) ("it does not serve the
legislative purposes for which interlocutory appeals of pleas to the jurisdiction were allowed to fragment the appeal on less
than the entire case against a defendant"); see also Speer v. Stover, 685 S.W.2d 22, 23 (Tex.1985) (sustaining a plea to the
jurisdiction requires dismissal of the entire suit). Because the determination of subject matter jurisdiction is a question of
law, we review the trial court's decision under a de novo standard of review. Mayhew v. Town of Sunnyvale, 964 S.W.2d
922, 928 (Tex. 1998).

"Governmental immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea
to the jurisdiction." Tex. Dept. of Transportation v. Jones, 8 S.W.3d 636, 637-39 (Tex. 1999). In Texas, a governmental
unit is immune from suit unless the state expressly consents, by statute or express legislative permission, to the suit. See
Federal Sign v. Texas S. Univ., 951 S.W.2d 401, 405 (Tex. 1997); Harris County v. Dillard, 883 S.W.2d 166, 168 (Tex.
1994); Lowe v. Texas Tech Univ., 540 S.W.2d 297, 298 (Tex. 1976). Governmental 

immunity is waived if liability can be established under the limited circumstances specified in the Texas Tort Claims Act
(the Act). City of Denton v. Van Page, 701 S.W.2d 831, 834 (Tex. 1986); Texas Parks and Wildlife Dept. v. Wilson, 991
S.W.2d 93, 95 (Tex. App.--Austin 1999), pet. denied, 8 S.W.3d 634 (Tex. 1999). If a governmental entity is sued without
such consent, the trial court should grant the governmental entity's plea to the jurisdiction. Lacy v. Rusk State Hosp., 31
S.W.3d 625, 629 (Tex. App.--Tyler 2000, no pet.); Vincent v. West Texas State University, 895 S.W.2d 469, 472 (Tex.
App.--Amarillo 1995, no writ).

Section 101.021(2) of the Act provides that a governmental unit is liable for "personal injury and death so caused by a
condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to
the claimant according to Texas Law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (Vernon 1997). To state a claim
under section 101.021(2) based upon the condition of tangible personal or real property, it is sufficient to allege that
defective or inadequate property contributed to the injury. Salcedo v. El Paso Hosp. Dist., 659 S.W.2d 30, 31-32 (Tex.
1983); City of Fort Worth v. Gay, 977 S.W.2d 814, 817 (Tex. App.-Fort Worth 1998, no writ). However, under section
101.060(a)(2) of the Act, a governmental unit is not liable for "the absence, condition, or malfunction of a traffic or road
sign, signal or warning device unless the absence, condition, or malfunction is not corrected by the responsible
governmental unit within a reasonable time after notice. . . ." Tex. Civ. Prac. & Rem. Code Ann. § 101.060 (Vernon 1997). 
 In the instant case, the plaintiffs alleged the County was negligent in "failing to maintain the proper signage[,]" and in
"failing to respond to public complaints and outcry to install the proper signage and/or traffic control devices. . . ." The
intervenors alleged the County was negligent in "failing to maintain the traffic control devices placed at the intersection[,]"
and in "failing to properly respond to complaints about the inadequate traffic control device at the intersection." From the
face of the pleadings, the plaintiffs and intervenors have pleaded a waiver of immunity under the Act. That is, the plaintiffs
and intervenors alleged injuries and deaths caused by a condition of tangible personal or real property. See Tex. Civ. Prac.
& Rem. Code Ann. § 101.021(2) (Vernon 1997). Furthermore, they have alleged that the County failed to correct the
condition within a reasonable time after notice. SeeTex. Civ. Prac. & Rem. Code Ann. § 101.060(a)(2) (Vernon 1997). 

Nevertheless, the County asserts the plaintiffs' and intervenors' allegation that it was negligent in its maintenance of the
stop sign were fraudulently pleaded to confer jurisdiction on the trial court. A trial court should grant a plea to the
jurisdiction where the evidence shows that the plaintiff pleaded fraudulently or in bad faith for the purpose of conferring
jurisdiction. See Denton County v. Howard, 22 S.W.3d 113, 118 (Tex. App.--Fort Worth 2000, no pet.).

The County argues that the depositions of Sergeant Escobedo, Corporal Cris Vidales, and Sergeant Juan Rodriguez
establish that "there was nothing obstructing the view of the stop sign or . . . the flow of traffic through the intersection." 
The County further contends "[t]here was nothing wrong with the sign." Because these depositions were conducted before
the plaintiffs and intervenors filed their petitions, the County asserts their allegation that the County failed to maintain
"signage" was fraudulently pleaded to confer jurisdiction. The County further urges that the plaintiffs and intervenors,
themselves, testified that they were suing because of poor lighting, and not because of poor "signage." Thus, they were
aware that no maintenance issue existed.

In their depositions, Sergeant Felipe Escobedo and Corporal Cris Vidales testified that there was no obstruction blocking
the stop sign. Escobedo testified the stop sign was clearly visible with the use of headlights at night. He stated that it was a
standard stop sign and he believed all stop signs had reflective capabilities. He did not believe Ms. Cano stopped before
entering the intersection. Sergeant Juan Rodriguez testified he did not have any problem seeing the stop sign on the night
of the accident and that there was nothing obstructing the stop sign. He could see a reflection from the stop sign. 

Osiel Perez Cantu, a plaintiff, testified she believed the accident was caused because the intersection was not well lit and a
pole was too close to the intersection. When asked if she believed the stop signs at the intersection were not visible at
night, she replied, "[t]hey were-Yeah, they were kind of old, so you could hardly see them." 

Amalia Capetillo, another plaintiff, testified that the stop signs "are not that reflective" and that "[t]here are others who say
it is not well lit or the signs cannot be seen well." 

Ana Cano testified she stopped at the stop sign and then proceeded forward. Maria Del Refugio Cano testified that Ana
Cano told her weeks after the accident that she did not remember having seen a stop sign. She told her that three or four
times. Ana began telling her that she remembered seeing a stop sign after the criminal trial. (5) Jayson Ray Closner
testified he lived near the intersection where the accident occurred. Closner testified he was aware of other accidents that
had occurred at the same intersection. The intersection was known as "Dead Man's Road" because there had been so many
accidents, some very severe and some resulting in fatalities. He testified you cannot see the stop sign at night because
"there's a field right next to it, you know there's going to be weeds, sunflowers . . . growing right next to it." A person
driving down Mile 6½ West Road at night who did not know the area would probably not be able to see the stop sign. 
According to Closner, the intersection always had stop signs, except on a few occasions when the signs were knocked over
by cars involved in accidents. It would take about a week or two for the signs to be fixed. There would be no signs "for
about a week or two and then they put another one up." Closner also testified that Mile 6½ West was formerly a dirt road,
and that it was paved around 1995. It was paved because there were so many accidents.

When asked if she believed that the accident might have never happened if the intersection had better lighting, Dominga
Vasquez, an intervenor, replied, "I don't know all of the facts sir. I don't know how to answer that." 

We conclude that the County has failed to prove that either the plaintiffs or intervenors fraudulently alleged, for purposes of
conferring jurisdiction, that the County negligently maintained the "signage" at the intersection. Although there is evidence
that the sign was clearly visible, there is also evidence to the contrary, including testimony that the sign was "kind of" old,
could hardly be seen, and was not that reflective. There was also testimony that the County had been told and was aware
that it was a dangerous intersection. Furthermore, the plaintiffs and intervenors did not, despite the County's assertion,
testify unequivocally that the lighting, and not the poor maintenance of the "signage," was the basis of their complaints. 

The County further contends there is no waiver of sovereign immunity because the intersection was constructed prior to
1970. The Texas Tort Claims Act provides that it does not waive immunity for claims based on an act or omission that
occurred before January 1, 1970. Tex. Civ. Prac. & Rem. Code Ann. § 101.061 (Vernon 1997); State v. Estate of Horton, 4
S.W.3d 53, 54 (Tex. App.--Tyler 1999, no pet.); Maxwell v. Texas Dept. of Transportation, 880 S.W.2d 461, 465 (Tex.
App.--Austin 1994, writ denied). When there is an alleged waiver of immunity based on a condition or use of personal or
real property, the State is entitled to immunity if it can prove the structure "was completed before 1970 and has remained in
the same condition since that time." Maxwell v. Texas Dept. of Transportation, 880 S.W.2d 461, 465 (Tex. App.--Austin
1994, writ denied); see Texas Parks and Wildlife Dept. v. Davis, 988 S.W.2d 370, 373 (Tex. App.--Austin 1999, no pet.).

In this case, there was testimony that the County had to replace the stop signs at the intersection periodically after 1970. 
Thus, the allegation of negligent maintenance of the "signage" was an act or omission that took place, at least in part, after
1970. 

The County also asserts that the plaintiffs' and intervenors' allegations of poor signage and lighting do not constitute special
defects. Apparently, the County contends that because the plaintiffs and intervenors simply alleged premises defects, rather
than special defects, the County cannot be held liable under the applicable duty of care.

For a claim based on a premises defect, a governmental unit owes the claimant the duty that a private person owes to a
licensee on private property, unless the claimant has paid for the use of the premises. Tex. Civ. Prac. & Rem. Code Ann. §
101.022(a) (Vernon 1997). A licensee owes a duty to use ordinary care either to warn the licensee of, or to make
reasonably safe, a dangerous condition of which the owner is aware and the licensee is not. State Dept. of Highways &
Pub. Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 1992) (op. on reh'g). 

In the case of a special defect, a governmental unit owes the same duty as that owed to an invitee by the owner or possessor
of premises. Payne, 838 S.W.2d at 237; see Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b) (Vernon 1997). This duty
includes the use of ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of
which the governmental entity was or reasonably should have been aware. City of Grapevine v. Roberts, 946 S.W.2d 841,
843 (Tex. 1997). Whether a condition is a special defect is a matter of law. Payne, 838 S.W.2d at 238.

The intervenors have properly pleaded, under either standard of care, a waiver of immunity based on the County's negligent
maintenance of the "signage." The plaintiffs and intervenors both alleged the County was given notice of the dangerous
intersection. Even assuming the plaintiffs and intervenors alleged a premises defect and not a special defect, they alleged
the County failed to make reasonably safe a dangerous condition of which the County was aware, and therefore pleaded a
violation of the duty owed to a licensee. Thus, whether this allegation is classified as a premises defect or a special defect
is immaterial. 

The County also maintains "[t]he majority of [the plaintiffs' and intervenors'] claims involve discretionary functions for
which the County maintains immunity." The County does not mention the allegation of inadequate maintenance of the
"signage" in its argument; apparently conceding that such allegation is not discretionary. 

Sovereign immunity is not waived for discretionary acts. See Tex. Civ. Prac. & Rem. Code Ann. § 101.056(2) (Vernon
1997); State v. Hynes, 865 S.W.2d 943, 944 (Tex.1993). Maintenance activities undertaken by governmental units at the
operational level, however, are not discretionary functions and are not immune from liability. City of Round Rock v. Smith,
687 S.W.2d 300, 303 (Tex. 1985); City of Fort Worth v. Gay, 977 S.W.2d 814, 817 (Tex. App.-Fort Worth 1998, no pet.). 
Here, there is no allegation that the negligent maintenance of the "signage" occurred at the policy-making level, rather than
the operational level. Consequently, even assuming the County's argument that it cannot be held liable for discretionary
acts extends to the allegation that it was negligent in maintaining the "signage," such argument fails. 

We conclude the plaintiffs and intervenors properly pleaded a waiver of immunity under section 101.021(2) of the Act
based on their allegation that the County negligently maintained the "signage" at the intersection. We do not reach the
plaintiffs' and intervenors' other allegations of waiver of immunity. See Harris County Flood Control Dist., 35 S.W.3d at
773 (court should deny plea to jurisdiction when it has jurisdiction over any claim against governmental unit). 

The trial court did not err in denying the County's plea to the jurisdiction. The County's sole issue is overruled. 

The judgment of the trial court is AFFIRMED. 



NELDA V. RODRIGUEZ

Justice



Do not publish .

Tex. R. App. P. 47.3.



Opinion delivered and filed

this 23rd day of August, 2001.

1. The plaintiffs include Amalia Capetillo, individually and as executrix of the estate of Orlando Perez and Lydia Marie
Perez and as next of friend of Orlando Lee Perez and Oscar Perez Cantu, individually, Osiel Perez Cantu, individually
Sylvia Garcia, individually and as executrix of the estate and as next of friend of Melissa Alicia Rodriguez.

2. In addition, according to the County's brief, the Cano defendants filed a cross-claim against all defendants, including the
County. However, the Cano defendants' cross-claim pleading is not in the record, though several answers to the
cross-claim are present in the record. The Cano defendants did not submit a brief to this Court, and neither the plaintiffs,
nor the intervenors mention the Cano's cross-claim in their briefs. Because the cross-claim pleading is not in the record, we
are unable to consider whether the trial court lacked subject matter jurisdiction over the claim brought by the Cano
defendants against the County. See Birdwell v. State, 996 S.W.2d 381, 382 n. 1 (Tex. App.--Houston [14th Dist.] 1999,
pet. ref'd) (appellant has burden to "[s]ecure a record [on] appeal that demonstrates error"); Salazar v. State, 5 S.W.3d 814,
816 (Tex. App.--San Antonio 1999, no pet.).

3. The intervenors' response was filed several days after the hearing, but before the court entered its written judgment. 
According to the intervenors, "[a]t the time of the hearing on the plea to the jurisdiction, a copy of [their response] . . . was
presented to the court." In fact, the only mention of the response during the hearing on the plea to the jurisdiction was a
brief statement by counsel for the intervenors, in which he said, "I have a copy of my response for the [c]ourt, if it would
benefit." The County did not make any objection as to the timeliness of the response at the trial level, and have not raised
the issue before this Court. 

4. Again, we note the Cano defendants' cross-claim pleadings are not in the record. As such, we cannot determine whether
their pleadings failed to allege facts that would establish waiver of the County's sovereign immunity. Likewise, we are
unable to review whether the Cano defendants fraudulently pleaded any allegations to confer jurisdiction on the trial court.

5. Apparently, Ana Cano was involved in criminal proceedings as a result of the accident.